ALYESKA PIPELINE SERVICE COM-
PANY, Clyde F. Klick, and Leslie
Warren Bays, Appellants,

v.

AURORA AIR SERVICE, INC., Appellee.

No. 3953.

Supreme Court of Alaska.

Dec. 28, 1979.

Max N. Peabody, Shimek & Peabody, Anchorage, for appellants.

Joseph W. Sheehan, Fairbanks, for appellee.

## OPINION

Before RABINOWITZ, C. J., CONNOR, BOOCHEVER and MATTHEWS, JJ., and DIMOND, Senior Justice.

CONNOR, Justice.

Appellants Alyeska Pipeline Service Company, Clyde F. Klick and Leslie Warren Bays (hereinafter referred to for convenience as Alyeska) appeal from the judgment of the superior court finding them liable in tort, in the sum of $362,901, for intentionally interfering in the contractual relationship of appellee Aurora Air Service, Inc., with Radio Corporation of America, and inducing a breach of contract without acting in good faith. Appellants' main claim in this appeal is that the trial court erred in ruling that, although the appellants did possess a unilateral contractual right to terminate the Aurora-RCA agreement by changing the scope of transportation services to be rendered to it by the Alyeska-RCA cost-reimbursable contract, such action must be in accord with principles of good faith.

Thus, appellants challenge the trial court's denial of the motion for summary judgment, and the denial of the motion for judgment n. o. v. Appellants also raise the following issues on appeal, contending that they constitute reversible error: that the jury instructions pertaining to the tort of interference with contract were erroneous, that it was error not to instruct the jury to disregard the testimony of R. A. French, that it was error to admit into evidence the use permits for pipeline camp airstrips, that it was error not to exclude the testimony of William D. Fowler, that it was error to permit the jury to consider punitive damages, and that it was error to deny the motion for remittitur.

### I.

On May 14, 1974, Alyeska and RCA executed a contract which provided that RCA would construct, operate, and maintain a communications system along the Trans-Alaska Pipeline. The contract set forth that RCA would furnish all supervision, engineering, labor, and transportation necessary to perform the contract. In fulfilling the transportation requirements of the Alyeska-RCA contract, RCA executed a contract on October 3, 1974, with Aurora.

The Aurora-RCA contract, in part, provided:

> Contractor hereby agrees to furnish one (1) Cessna 207 aircraft with pilot, parts, and accessories to provide aircraft service to transport RCA–Alascom equipment, supplies, and personnel along the pipeline route as designated by RCA–Alascom.

Article 13 of the contract, "Optional Termination," provided that the contract could be terminated at RCA's option.[1]

Prior to the execution of the Aurora-RCA and Alyeska-RCA contracts, Aurora and Alyeska had a contractual relationship under which it was agreed that Aurora would provide non-exclusive air service to Alyeska. In the spring of 1975 a payment dispute arose under this contract between Aurora and Alyeska. Shortly after Aurora commenced a suit seeking recovery, Alyeska paid Aurora the sum it claimed was due.

In October, 1975 Alyeska took over the transportation requirements of its contract with RCA pursuant to a provision in the contract which provided:

> Engineer shall have the right at any time, to make changes in Work. To the extent that these affect the contractor price, and scheduled completion date, appropriate adjustments will be made. Engineer shall prepare all changes in writing and shall have the option of requiring contractor to suspend any affected work pending preparation by CONTRACTOR written notice to Contractor. Upon receipt of such notice, Contractor shall take such action as RCA Alascom directs. In the event of termination under this provision, payment shall be made on the basis of Article 3."

---

1. Article 13, "Optional Termination," of the Aurora-RCA contract states:

   "Should RCA Alascom determine that its best interest will be served by terminating the work outlined in the Scope of Effort, then it may be terminated in whole or in part by

and valuation by ALYESKA of the effect of the proposed CHANGES on cost and schedule.

Shortly thereafter RCA, prompted by Alyeska's election to take over the air transportation service, exercised its option to terminate its contract with Aurora.

The present controversy centers around the intentions of Alyeska in interfering with the Aurora-RCA contract. Alyeska claims that it had an absolute right under its contract with RCA to take over the air transportation function. Alternatively, it argues that it was justified in doing so by economic and safety considerations. Aurora contends that Alyeska was motivated by spite, resulting from the earlier dispute between Aurora and Alyeska.

In the superior court, Alyeska filed a motion for summary judgment, asserting that the Alyeska-RCA contract gave it the right to change the scope of that contract unilaterally and to perform the air transportation for RCA's work under the contract. Alyeska argued that it was the exercise of its rights to take over the transportation function that caused RCA to sever its relationship with Aurora, and that it should not be held liable for that result. The court agreed that Alyeska could change the transportation requirements under the Alyeska-RCA contract,[2] but it held that a jury question was presented as to whether Alyeska had done so in good faith. Therefore, the motion for summary judgment was denied. Alyeska challenges this ruling.

■ The unilateral right to modify the Alyeska-RCA contract, accepting the superior court's ruling that there was no ambiguity in regard to the interpretation of "work," was vested in Alyeska, but it had to be exercised in good faith. We reject Alyeska's contention that a privilege arising from a contractual right is absolute and may be exercised regardless of motive. It is a recognized principle that a party to a

contract has a cause of action against a third party who has intentionally procured the breach of that contract by the other party without justification or privilege. *Long v. Newby*, 488 P.2d 719, 722 (Alaska 1971). The weight of recent authority holds that even though a contract is terminable at will, a claim of unjustifiable interference can still be made, for "[t]he wrong for which the courts may give redress includes also the procurement of the termination of a contract which otherwise would have [been] continued in effect." *Smith v. Ford Motor Co.*, 289 N.C. 71, 221 S.E.2d 282 (1976). *Accord, Island Air, Inc. v. LaBar*, 18 Wash.App. 129, 566 P.2d 972 (1977); *Mason v. Funderburk*, 446 S.W.2d 543, 546 (Ark.1969). We choose to follow this trend and thus adopt the view espoused by Prosser:

> "Since *Lumley vs[v]. Gye* there has been general agreement that a purely 'malicious' motive, in the sense of spite and a desire to do harm to the plaintiff for its own sake, will make the defendant liable for interference with a contract. The same is true of mere officious intermeddling for no other reason than a desire to interfere. On the other hand, in the few cases in which the question has arisen, it has been held that where the defendant has a proper purpose in view, the addition of ill will toward the plaintiff will not defeat his privilege. It may be suggested that here, as in the case of mixed motives in the exercise of a privilege in defamation and malicious prosecution, *the court may well look to the predominant purpose underlying the defendant's conduct.*" [citations omitted and emphasis added]

Prosser, *Law of Torts*, § 129, at 943 (4th ed. 1971).

■ Alternatively, Alyeska asserts that its overriding economic and safety interests constituted a sufficient privilege to require dismissal of Aurora's action as a matter of

---

2. In resisting summary judgment, Aurora argued that the provision of the Alyeska-RCA contract permitting Alyeska to unilaterally change the scope of the "work" was not intended to cover the transportation function,

and that this could only be altered by mutual agreement between Alyeska and RCA. The trial court rejected this argument and a determination of that question is not necessary to the decision of this appeal.

**1094**

law.[3] One is privileged to invade the contractual interest of himself, others, or the public, if the interest advanced by him is superior in social importance to the interest invaded. 1 Harper & James, *The Law of Torts*, § 6.12, at 514 (1956); *Restatement of the Law of Torts*, § 733 (1939). However, if one does not act in a good faith attempt to protect his own interest or that of another but, rather, is motivated by a desire to injure the contract party, he forfeits the immunity afforded by the privilege. *Smith v. Ford Motor Co.*, 221 S.E.2d at 296; *Serafine v. Palm Terrace Apts., Inc.*, 343 So.2d 851, 852 (Fla.App.1976); *Dunshee v. Standard Oil Co.*, 152 Iowa 618, 132 N.W. 371 (1911); *Tuttle v. Buck*, 107 Minn. 145, 119 N.W. 946 (1909).[4]

■ The question of justification for invading the contractual interest of another is normally one for the trier of fact, particularly when the evidence is in conflict. *American Surety Co. v. Schottenbauer*, 257 F.2d 6, 12–13 (8th Cir. 1958); *California Beverage & Supply Co. v. Distillers Distributing Corp.*, 158 Cal.App.2d 758, 323 P.2d 517, 524 (1958); *Barlow v. International Harvester Co.*, 95 Idaho 881, 522 P.2d 1102 (1974); *Owen v. Williams*, 322 Mass. 356, 77 N.E.2d 318 (1948). In the case at bar, the central factual issue, as to which there was evidentiary conflict, was whether Alyeska was genuinely furthering its own economic and safety interests or was using them as a facade for inflicting injury upon Aurora. There was sufficient evidence upon which the jury could properly find that Alyeska was acting out of ill will towards Aurora,

rather than to protect a legitimate business interest.[5] The trial judge correctly denied Alyeska's motion for summary judgment and submitted this issue to the jury.

■ Our holding as to the denial of summary judgment also largely disposes of Alyeska's contention that the trial court erred in denying Alyeska's motion for judgment notwithstanding the verdict. In reviewing the denial of that motion we will not weigh conflicting evidence or judge the credibility of witnesses. We must view the evidence in the light most favorable to the non-moving party. If, viewing the evidence in that manner, there is room for diversity of opinion among reasonable persons, the question is for the jury, and an appellate court will not interfere with the jury's verdict. *Holiday Inns of America v. Peck*, 520 P.2d 87, 92 (Alaska 1974); *City of Fairbanks v. Nesbett*, 432 P.2d 607, 609–10 (Alaska 1967). In the case at bar the evidence was susceptible to varying interpretations on the questions of good faith, justification, and motive. It follows that the trial court did not err in denying the motion.

## II.

■ Alyeska asserts that the court's instructions to the jury concerning tortious interference with contract were erroneous. In the trial court, Alyeska only objected generally to the instructions that were given. Because the objection did not distinctly state the matter objected to and the grounds of objection, we will not consider the point further. Civil Rule 51(a);[6]

---

3. Reliance is placed on *Ulan v. Lucas*, 18 Ariz. App. 129, 500 P.2d 914 (1972); *Radiology Professional Corporation v. Trinidad Area Health Assoc., Inc.*, 565 P.2d 952 (Colo.App.1977), aff'd 577 P.2d 748 (Colo.1978); *O'Brien v. Western Union Telegraph Company*, 62 Wash. 598, 114 P. 441 (1911), and other cases. We find them to be distinguishable in various respects. To the extent that these cases follow the view that there can never be liability for inducing a contract party to exercise its legal right to terminate its contract with a third party, we decline to follow them.

4. *See also*, Restatement of Torts (Second) Explanatory Notes § 769, Comment d at 45 46; C.

Carpenter, "Interference with Contract Relations," 41 Harv.L.Rev. 728, 746 (1928).

5. Alyeska maintains that its primary consideration in taking over the air transportation was safety. Aurora presented evidence that its safety record was far better than that of the Alyeska contracted aircraft that replaced it.

6. Civil Rule 51(a) states:
   (a) *Requested Instructions—Objections.* At the close of the evidence or at such earlier time during the trial as the court reasonably directs, any party may file written requests that the court instruct the jury on the law set forth in the requests. The court shall inform

*Brown v. Estate of Jonz*, 591 P.2d 532 (Alaska 1979); *Girves v. Kenai Peninsula Borough*, 536 P.2d 1221, 1223 (Alaska 1975); *Mitchell v. Knight*, 394 P.2d 892 (Alaska 1964).

■ Alyeska also claims error in the trial court's refusal to give its requested Instruction No. 7, which stated:

"The issue to be decided by you in this case is as follows:

Did the defendants maliciously and for the sole purpose of injuring plaintiff, provide RCA with air transportation services in support of TAPS/769?"

This instruction would have drastically oversimplified the questions presented in this case and, if taken literally and by itself, might have misled the jury. The court gave much more ample and detailed instructions on the issues to be decided.[7] We find no error in refusing proposed Instruction No. 7.

Alyeska next claims that it was error not to give its proposed Instruction No. 10, which stated:

"[P]laintiff has the burden of proving by a preponderance of the evidence that defendants' actions were malicious and committed with the sole intent of injuring plaintiff."

Alyeska argues that Aurora's evidence of the termination of its contract, intentionally procured, made out a prima facie case, that the burden of proof shifted to Alyeska to show justification, and that Alyeska satisfied that requirement by producing evidence of its contract with RCA and its primary interest in the performance of the RCA contract. It is urged that if, in spite of such evidence, the good faith of Alyeska was still a valid issue, the burden of proving Alyeska's lack of good faith should have shifted back to Aurora.

■ Alyeska supports this argument by reference to the commentary accompanying a recent redraft of the Restatement of Torts (Second) § 767 Comment k at 37–38, in which the drafters note that the rule on allocating the burden of proof is in an unsettled state. The drafters of the commentary leave that question open. However, in *Long v. Newby*, 488 P.2d 719, 722 (Alaska 1971), we laid down the general rule that when a prima facie case is made out by showing that a breach was intentionally procured, it is incumbent upon the defendant to show justification.

counsel of its proposed action upon the requests prior to their arguments to the jury, but the court shall instruct the jury after the arguments are completed. No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection. Opportunity shall be given to make the objection out of the hearing of the jury, by excusing the jury or hearing objections in chambers.

7. The instructions given were:

10. The elements of the tort of inducing termination of contract are:
1. An existing contract between the plaintiff and a third party;
2. Defendants' knowledge of the contract;
3. An intentional unjustified inducement to terminate the contract;
4. A subsequent termination by the third party;
5. Resulting damage to the plaintiff.

11. The burden of proof to establish by a preponderance of the evidence that defendants' conduct and action was justifiable and was not done for the purpose to interfere with Aurora Air Service, Inc.'s contract with RCA must be proven by the defendants.

12. You are instructed that based upon the evidence presented in this case, the plaintiff, Aurora Air Service, Inc., has established a prima facie case by producing evidence of the termination of its contract with RCA was intentionally procured by the defendants, their agents or employees. Aurora Air Service, Inc. having established a prima facie case, Aurora Air Service, Inc. is entitled to recovery, unless the defendants show that their conduct was justified. The burden of proof is upon the defendants to show the justification of their conduct.

13. With regard to the defendants' "justification" in this action, you are instructed that defendants are not required to prove that their actions were necessarily correct or represent a course of action that you might agree with or find preferable. Rather, the obligation to act in good faith or with justification is the obligation to not act maliciously or with the specific intent to injure plaintiff.

Alyeska argues that the case at bar presents a special fact pattern, that Alyeska had the right to change the Alyeska-RCA contract, and that the burden of showing further that Alyeska acted in bad faith or with malice should be part of plaintiff's case. We are not persuaded. The issue presented here was whether Alyeska really did exercise its rights in good faith or whether it acted from an ulterior motive. We think that such proof goes to the question of justification, and that it was not part of Aurora's prima facie case,[8] which only requires a showing that a breach was intentionally procured. Nor do we think that Alyeska has submitted sufficient proof of justification to trigger another shifting of the burden of proof and to require Aurora to rebut such evidence. There may be exceptional situations in which such a treble shifting of burdens should occur, but we do not view this case as one of them. On this point there was no error.

Alyeska contends that it was error not to give its proposed Instruction No. 13, which would have told the jury that the defendants could not be held liable if they believed in good faith that their actions would enhance the economic and safety aspects of the project, and that what was at issue was not the correctness of their opinions but, rather, whether they acted maliciously and with intent to injure Aurora. In our opinion the refusal of this instruction was not error. The instruction actually given by the court adequately informed the jury of the issues,[9] and the proposed instruction was unnecessary and might well have confused the jury.

### III.

Alyeska asserts that error was committed in admitting the testimony of James Pippin concerning a conversation he had with R. A. French, who was an agent of Alyeska. Pippin's testimony was as follows:

"Q. Did you have any conversations with Mr. French?

A. Yes, we talked for—oh, probably a half hour or so. He—I had my Twin Otter there, and he came out and looked at the Twin Otter. We climbed around in it. We talked about the problems that we'd had, and . . . the idea that it was kind of unfortunate that we'd had to go through all of these problems to resolve this one little thing.

Q. Did he make any statements to you about—you know, what he thought about this—this change over?

A. Well, he—he said that he thought I'd made a big mistake by suing Alyeska. And I told him that I didn't—you know, I wasn't real proud of the thing. It was just something that I had to do to get my money. And . . . you know, it was—it was more or less left at the—at the point that, you know, 'you did what you had to do, and I had to do what I had to do,' you know, and that was that."

No objection was made at this point in the trial. Ten days later, Alyeska objected to this testimony and asked the court to instruct the jury to disregard it. The basis for this request was that in answer to a previous written interrogatory Pippin had not revealed this conversation. The interrogatory was:

"What evidence do you have that Alyeska Pipeline Service Company intentionally and willfully interfered with the contractual relationship existing between Aurora Air Service, Inc. and RCA?"

The answer stated:

"Statements of RCA management personnel."

Initially the court ruled in favor of Alyeska on its motion to instruct the jury to disregard Pippin's testimony, but later the

---

**8.** In order to negate liability, the justification must be as broad as the act and must cover not only the motive and purpose, but also the means used. *Louis Kamm, Inc. v. Flink,* 113 N.J.L. 582, 175 A. 62 (1934).

**9.** See jury instructions in note 7.

court reconsidered its ruling. The court decided that it would bar Aurora's counsel from referring to this testimony in subsequent testimony or in final argument, but that it would not instruct the jury to disregard it, as that might draw undue attention to the matter and not completely cure the defect.

Alyeska argues that Pippin's response to the interrogatory was a violation of Civil Rule 26(e), which requires a party to supplement or amend a response to a discovery request, where the party thereafter acquires additional information which alters the correctness of the response.[10]

█ Aurora argues that the response here was merely a general answer to a general and overly broad question, and that Civil Rule 26(e) was observed. We need not pass upon this argument, however. Given the failure to object to this testimony when it was elicited and the debatability of whether the response to the interrogatory should have been supplemented, it is our view that the trial court could employ its discretion in ruling upon this item of evidence and in determining how to handle this late objection. There was other substantial evidence from which the jury could have found that Alyeska acted with the purpose of wrongfully interfering with Aurora's contractual rights. We are not convinced that the court abused its discretion in proceeding as it did. We find no error.

## IV.

█ The next question is whether it was error to admit into evidence certain government use permits and lease documents under which Alyeska was enabled to occupy airstrips along the pipeline route. Alyeska objected below, and argues here, that these documents were irrelevant. Aurora offered these items in order to show that the airstrips were not privately held and that they were required to be open to public use. Aurora offered these exhibits in connection with other testimony which showed that after 1975, as against Aurora, Alyeska took the position that the airstrips were under Alyeska's private control, and that Alyeska thus attempted to frustrate Aurora's operations as a common carrier.

Alyeska contends that the public or private nature of the airstrips was not a legitimate issue in the case, absent a showing that Aurora was singled out for treatment different from that accorded to other air carriers, and that no such showing was made in the trial court.

While the relevance of these exhibits may have been somewhat marginal, they can be viewed as having some tendency to establish an ultimate point which was germane to the issues on trial,[11] i. e., whether Alyeska acted from an improper motive in its dealings with Aurora. The admission of this evidence was not error.[12]

10. Civil Rule 26(e) reads:
(e) *Supplementation of Responses.* A party who has responded to a request for discovery with a response that was complete when made is under no duty to supplement his response to include information thereafter acquired, except as follows:
(1) A party is under a duty seasonably to supplement his response with respect to any question directly addressed to (A) the identity and location of persons having knowledge of discoverable matters, and (B) the identity of such person expected to be called as an expert witness at trial, the subject matter on which he is expected to testify, and the substance of his testimony.
(2) A party is under a duty seasonably to amend a prior response if he obtains information ·upon the basis of which (A) he knows that the response was incorrect when made, or (B) he knows that the response though

correct when made is no longer true and the circumstances are such that a failure to amend the response is in substance a knowing concealment.
(3) A duty to supplement responses may be imposed by order of the court, agreement of the parties, or at any time prior to trial through new requests for supplementation of prior responses.

11. Alaska Rule of Evidence 401 provides:
Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

12. Alaska Rule of Evidence 402 provides:
All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States or of this state, by enactments

### V.

Alyeska claims error in the admission of testimony by William Fowler, an accountant who testified about Aurora's loss of earnings. The contention is that Fowler relied upon data which were not in evidence, i. e., accounting materials prepared by others, and thus there was a lack of foundation for his opinion as to Aurora's lost earnings.

We note that Fowler's deposition was taken before trial and that the financial records on which he relied were then produced at trial. Most of Alyeska's argument is directed to claimed weaknesses in Fowler's opinion, which bears upon the weight to be given to it by the trier of fact. But under our several precedential cases on the subject of expert opinion testimony we have concluded that there was no error in admitting it. *D. H. v. State,* 561 P.2d 294, 296–7 (Alaska 1977); *Northern Lights Motel, Inc. v. Sweaney,* 561 P.2d 1176, 1189 (Alaska 1977); *Ferrell v. Baxter,* 484 P.2d 250 (Alaska 1971).

### VI.

Alyeska asserts that it was error to submit the question of punitive damages to the jury. Given the nature of the theory on which Aurora proceeded in this case, that Alyeska purposely destroyed Aurora's contractual relationship with RCA, the trial court was entirely correct in submitting this question to the jury. *Haskins v. Shelden,* 558 P.2d 487, 493–94 (Alaska 1976). There was no error.

### VII.

Lastly, Alyeska contends that the damages awarded should have been reduced by the trial court, pursuant to a motion for a new trial or for remittitur.

At trial Aurora's accounting witness, Fowler, testified to two different figures representing loss to Aurora because of termination of the RCA contract. One figure was the specific loss stemming from the

cessation of the RCA contract. This amount was $136,828. The other figure was the loss of projected earnings, based upon historic earnings. This was Fowler's estimate of the total economic impact on Aurora caused by the termination of the RCA contract, assuming that the economic environment and the momentum of the business remained the same as in the past. This amount was $226,073. Fowler testified that the latter figure included the former.

In reviewing trial court decisions on motions for remittitur or new trial, the appropriate standard of review was articulated in *National Bank of Alaska v. MuHugh,* 416 P.2d 239, 244 (Alaska 1966), as follows:

> We have held that the granting or refusing of a request for a new trial is discretionary with the trial judge. We do not interfere in the exercise of that discretion except in the most exceptional circumstances and to prevent a miscarriage of justice. In order for us to hold that the trial judge has abused his discretion, we would have to be left with the definite and firm conviction on the whole record that the judge made a mistake in refusing to order a remittitur or grant a new trial in response to appellant's motion. [footnotes omitted]

The jury awarded damages of $362,901. It is quite evident that the jury erroneously added together the two figures testified to by Fowler. Aurora argues that any amount awarded over the figures provided by Fowler should be considered as punitive damages. But in a situation of this type, where it is clear that the jury mistakenly added together two amounts of compensatory damages, one of which was inclusive of the other, it would be unreasonable to let the combined figure stand. Therefore, in this case, we conclude the superior court abused its discretion in failing to grant the motion for remittitur or new trial.

Since the award included Fowler's estimate of the total economic impact on Aurora, it is clear that they intended to award

of the Alaska Legislature, by these rules, or by other rules adopted by the Alaska Supreme Court. Evidence which is not relevant is not admissible.

this amount, the more ample of the two damage figures. Therefore, we direct that the superior court order a remittitur of $136,828 and if Aurora Air Services fails to accept the reduced award of $226,073 with appropriate costs and interest, that a new trial be ordered.[13]

AFFIRMED in part, REVERSED in part.

BURKE, J., not participating.

---

**13.** In *City of Kotzebue v. Ipalook,* 462 P.2d 75, 80 (Alaska 1969), we stated:

  Both under this rule of civil procedure and its federal counterpart, it is established that trial courts are empowered to deny a new trial on the condition that plaintiff accept a remittitur. [footnote omitted]

*See Hash v. Hogan,* 453 P.2d 468, 473 (Alaska 1969).