Linda OLLICE, Appellant,

v.

ALYESKA PIPELINE SERVICE
COMPANY, Appellee.

No. 5840.

Supreme Court of Alaska.

Feb. 18, 1983.

Roger Brunner, Rice, Hoppner, Brown & Brunner, Fairbanks, for appellant.

Kenneth P. Eggers, Teresa A. Hogan, Groh, Eggers, Robinson, Price and Johnson, Anchorage, Alfred Toulon Smith, Anchorage, for appellee.

Before BURKE, C. J., and RABINOWITZ, MATTHEWS and COMPTON, JJ.

## OPINION

RABINOWITZ, Justice.

This appeal involves a suit for wrongful interference with an employment contract brought by Linda Ollice against Alyeska Pipeline Service Company (Alyeska). Ollice alleged that she was discharged from her job as a security guard on the oil pipeline (Pump Station 5) by her employer American Guard and Alert, Inc. (AGA) at the insistence of Alyeska.[1] Alyeska admitted it had directed AGA to remove Ollice from the guard force at the Alyeska facility. Alyeska claimed it was justified in taking this action because Ollice had violated Alyeska's rules prohibiting the possession and consumption of alcoholic beverages at Alyeska facilities or on Alyeska property. The case was tried before a jury which returned a verdict in favor of Alyeska.

At trial the parties stipulated to the following facts: Ollice was employed in the fall of 1978 as a security guard for AGA, which had a contract to provide guard services for Alyeska on the Trans-Alaska Pipeline System.[2] An Alyeska internal rule pro-

---

1. Ollice had originally filed suit against AGA and Alyeska. Prior to trial, however, the parties stipulated to a dismissal with prejudice of Ollice's claim against AGA for wrongful discharge and failure to pay overtime wages.

2. Under this contract, Alyeska reserved the right to require AGA to remove from Alyeska facilities any guard who did not adhere to Alyeska's rules of conduct. The contract provided:

> CONTRACTOR shall at all times enforce strict discipline and good order at the WORK SITES and in this connection shall seek to avoid employing on SERVICES any unfit person or anyone not skilled in the work assigned to him. ALYESKA may refuse any

persons admission to property, under OWNERS' or ALYESKA's control and CONTRACTOR shall promptly exclude and remove any such person therefrom.

ALYESKA shall post rules and regulations governing the performance of SERVICES and conduct of employees at the camp and WORK SITE(S). CONTRACTOR shall take all steps necessary to require its employees to comply with such rules and regulations, including obtaining appropriate provisions in collective bargaining agreements, if necessary. In addition, CONTRACTOR shall notify its employees that failure to observe such rules and regulations by any employee of CONTRACTOR will be grounds for appropri-

hibited possession and consumption of alcohol by anyone on Alyeska property or facilities. On November 26, 1978, Ollice was invited to a birthday party for one of Alyeska's employees, to be held on Alyeska property. Ollice agreed to attend only after she was assured that no alcohol would be served. Ollice was off duty when she went to the party. At the party Ollice was given a drink, and after taking several sips she discovered it to be wine. Upon realizing that alcohol was being consumed, Ollice immediately left the party but did not report the incident to her superiors.

Soon after this incident, Robert Koslick, the Northern District Security supervisor for Alyeska, learned that alcoholic beverages had been served at the party. On December 29, he interviewed Ollice, and she admitted that she had attended the party and that she had consumed some wine. Koslick then directed Ollice's immediate AGA supervisor, Lt. Bryan, to remove Ollice from Alyeska property. "This directly resulted in the termination of plaintiff by American Guard and Alert." [3] Ollice was rehired on March 24, 1979. [4] Ollice was the only person who attended the party who was fired, although Alyeska claims suspensions and warnings were issued to other employees who were in attendance. Ollice was the only security guard at the party. Ollice is a woman and an Athabascan Indian. [5]

Both parties agreed that Ollice established a prima facie case of intentional interference with her employment contract by Alyeska. The only factual issue was whether Alyeska had adequate justification for its actions. Alyeska emphasized Ollice's violation of the rule banning alcohol consumption and the consequent harm to her

credibility as a security guard. Alyeska also noted that because Ollice was the only security guard at the party, she was the only participant under Koslick's supervision. According to Alyeska, the fact no other workers were fired is simply a reflection of Koslick's tough stance with his charges, the security force, while other supervisors chose lesser (or no) punishments for their workers.

Ollice stressed the arbitrariness of the punishment. She claimed that the blanket rule prohibiting alcohol was seldom enforced, and that she had even been told by her AGA superior to overlook violations of the rule. Ollice also introduced evidence to show Koslick's discriminatory actions toward her. Koslick admitted that Ollice was the only person at the party who he questioned although he normally would interview all participants at a party where alcohol was served. Koslick also testified that he used his influence to help another worker, not directly under his supervision, who had been at the party and who admitted drinking. [6] Although Ollice made reference to racial and sexual discrimination, the thrust of her argument was that Alyeska's disparate treatment of her was enough to raise an inference of improper motives and that Alyeska's alleged justification was just a pretext for some wrongful purpose.

The superior court in giving its jury instructions characterized Ollice's case as one of intentional interference with an employment contract on the basis of racial or sexual discrimination. In response to several questions from the jury during its deliberations, the superior court indicated that the jury should examine only Ollice's firing and not Alyeska's handling of the "whole incident," and that a verdict for Ollice would

ate action, including removal of the employee from camp and WORK SITES.

**3.** Ollice asserted that Koslick specifically told Lt. Bryan to fire her. Koslick testified that he merely told Lt. Bryan to remove her from Alyeska property.

**4.** Ollice had initiated a proceeding with the Human Rights Commission. Her rehiring was related to that proceeding.

**5.** Ollice testified that she was the only Athabascan native at the party.

**6.** This employee, Lee Davis, was the "guest of honor" at the birthday party. She was fired, however, for reasons other than her participation at the party. She went to Koslick to try to get him to help her get rehired. She told Koslick about the party, and he subsequently helped her get her job back.

represent a finding that she received disparate treatment strictly on the basis of race or sex. In Instruction No. 3, the superior court informed the jury that Alyeska, in seeking Ollice's removal, must have acted in good faith without malice or the specific intent to injure Ollice. Finally, the superior court refused to give Ollice's proffered jury instruction regarding inferences which can be drawn from circumstantial evidence. On appeal, Ollice contends that each of these rulings and actions were erroneous.

I. *Did The Superior Court Improperly Limit Ollice's Case to One of Sex or Race Discrimination?*

■ ▪The superior court instructed the jury in part that Ollice "... contends that Alyeska Pipeline Service Company discriminated against her because of her race or sex when it ordered American Guard and Alert to terminate her." Alyeska asserts that Ollice failed to specifically object to the instruction when the final instructions were presented to the jury.[7] Ollice contends that the trial court was aware of her objections to the superior court's limitation of her case. The fact that the trial court was aware of Ollice's position on this issue does not excuse her failure to object to the instruction in question. *Brown v. Estate of Jonz,* 591 P.2d 532 (Alaska 1979).[8] Although Ollice failed to object appropriately to the instruction in question this court will consider her substantive arguments relating to this issue if the instruction constituted plain error.[9] To constitute plain error the

instruction must create a high likelihood that the jury will follow an erroneous theory resulting in a miscarriage of justice.[10] We conclude that since the trial court did not err in limiting Ollice's case to one of racial or sexual bias the giving of instruction no. 7 did not constitute plain error for the following reasons.

■ The only factual issue for determination by the jury relates to the question of Alyeska's justification. More particularly, the jury had to determine whether Alyeska exercised its acknowledged contractual rights to enforce its rule for a legitimate purpose or for a covert and impermissible purpose. In this regard the superior court instructed the jury that on the basis of the evidence presented Ollice "has established a prima facie case" by proving that the termination of her employment contract with American Guard was "intentionally directed" by Alyeska. The court further informed the jury that Ollice was thus entitled to recover unless Alyeska "shows that its conduct was justified."[11] The superior court further instructed the jury that:

> The plaintiff contends that Alyeska ... discriminated against her because of her race or sex when it ordered American Guard ... to terminate her ....
>
> Alyeska contends that Linda Ollice was terminated because she violated the contract of her employment with American Guard ... and the terms and conditions of her contract between her employer and Alyeska Pipeline Service Company.

**7.** Alaska R.Civ.Pro. 51(a) provides:
No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and grounds of his objection.

**8.** In *Drickersen v. Drickersen,* 604 P.2d 1082, 1085 (Alaska 1979) and *City of Nome v. Ailak,* 570 P.2d 162, 166 (Alaska 1977) the court considered allegations of error in the giving of instructions despite appellants' failure to make specific objections. Unlike those cases, however, the superior court in this case did not give Ollice a "blanket exception." While the trial court did state, "all exceptions taken to the instructions previously will be considered as having been preserved at this time," it was

referring to the preceding conference where both attorneys examined each instruction and detailed their exceptions. At that conference Ollice's attorney was aware of the necessity for making specific objections but for some unexplained reasons failed to object to instruction no. 7.

**9.** *Brown v. Estate of Jonz,* 591 P.2d 532, 535 (Alaska 1979).

**10.** *City of Nome v. Ailak,* 570 P.2d 162, 171 (Alaska 1977).

**11.** The superior court instructed that the burden of proof was upon Alyeska to show the justification for its conduct.

You are instructed that such a reason is a non-discriminatory reason.

Therefore, if you find that Linda Ollice has proven that she suffered disparate treatment at the hands of Alyeska and that the reasons for her discharge were merely a pretext for her discharge, your verdict must be for the plaintiff.

On the other hand, if the plaintiff was not treated disparately and the reasons exercised by Alyeska for directing her discharge was not a pretext then your verdict must be for the defendant Alyeska Pipeline Service Company.

In our view the court's instructions fairly presented Ollice's case to the jury and, given the evidence in the record, were not tantamount to a "limitation" upon Ollice's case. The only evidence of pretext or improper motive on Alyeska's part was related to sex or race discrimination. Ollice has not cited us any portion of the record where she was precluded from introducing evidence on another theory.[12]  In this regard, we think the case at bar is similar to *Bendix Corp. v. Adams*, 610 P.2d 24 (Alaska 1980). There the plaintiff sued Bendix for alleged interference on a contract between the plaintiff and Bendix's subsidiary. Bendix argued its interference was justified because of its direct financial interest in the subsidiary. The jury found for plaintiff and this court reversed, holding that there was no evidence that Bendix acted out of any malicious motive. We stated:

> Adams does not appear to allege anywhere that the Bendix directive was the product of ill will or maliciousness.[13]

In the course of distinguishing certain prior cases, we emphasized in *Bendix* the lack of any evidentiary basis for a finding of bad faith or retaliation on Bendix's part.[14]  Similarly, in the case at bar there is an absence of evidence from which a jury might conclude that Alyeska was motivated to interfere in Ollice's contract with American

Guard for reasons other than sexual or racial bias.

II. *Did The Superior Court Err In Its Responses To The Jury's Questions?*

The first response that Ollice objects to was given by the superior court in regard to the following question:

> [A]n instruction reads "Alyeska Pipeline must prove that the justification was as broad as its actions." Our question is: Does this apply only to Linda's firing or to how Alyeska handled the whole incident.

The superior court responded, "As to Linda Ollice only."

Ollice argues that the trial court's response to the question cut off the bulk of her case. Much of the evidence she introduced at trial emphasized the lenient way other party participants were treated, vis-a-vis Ollice, for the same transgression. According to Ollice, the court's response limited the jury's attention only to her firing and foreclosed any consideration of Alyeska's treatment of the other parties and its refusal to rehire Ollice even after it was discovered that no one else at the party was expelled.

Alyeska argues that the trial court's response properly indicated that the only issue for the jury was whether Alyeska's procurement of Linda Ollice's discharge was a proper exercise of its contractual rights. Alyeska argues that the reason for Ollice's disparate treatment was the company's separate lines of authority. She was the only guard at the party and therefore the only one under Koslick's supervision; moreover, Koslick reasonably believed that those who enforce the rules should strictly adhere to them.

We hold that the superior court's response was correct. The only issue remaining at trial was Ollice's firing and whether Alyeska acted in good faith when it direct-

---

**12.** At several stages in the trial the court requested counsel for Ollice to identify any theory other than race or sex discrimination which would support her claim that Alyeska lacked justification for its actions.

**13.** *Bendix Corp. v. Adams*, 610 P.2d 24, 31 (Alaska 1980).

**14.** *Id.* 610 P.2d at 32.

ed her off Alyeska property. Thus, the nature and the substance of the relationship between Ollice and Alyeska was of paramount significance.

■ Later in their deliberations there was another exchange between the jury and the trial judge. The jury asked:

If we decide for the plaintiff, Linda Ollice, are we establishing that she received disparate treatment strictly on the basis of race or sex?

The superior court responded, "Yes." Ollice raises two objections to the superior court's response: that it improperly shifted the burden of proof on the issue of justification from Alyeska to Ollice, and that it improperly narrowed Ollice's case to race or sex discrimination. Since we have previously addressed and disposed of Ollice's second contention we will answer Ollice's first objection.

After reviewing the question and response thereto and Ollice's argument, we are unable to see how the court's response caused any shift in the burden of proof. The issue before the jury was whether Alyeska was justified in its actions. In order to decide for Ollice the jury would have to decide that Alyeska's alleged justification was a pretext for some improper motive. Since the superior court had narrowed the range of improper motives to "race or sex discrimination" a verdict for Ollice would indeed mean that the jury had found that Ollice "received disparate treat-

ment strictly on the basis of race or sex." This statement would be true regardless of which party had the burden of proof on the issue of justification. Therefore, we hold that the court's response did not result in any shift of burden of proof concerning this issue.[15]

### III. Did The Superior Court Err In Giving Instruction No. 3?

■ Ollice claims that the superior court made three errors in giving instruction number three which set out Alyeska's burden of proof in establishing justification. Ollice first argues that the instruction incorrectly eases the defendant's case by only requiring Alyeska to show that it acted without malice or without specific intent to injure. The instruction reads in part: "[T]he obligation to act in good faith is the obligation not to act maliciously or with specific intent to injure plaintiff. Defendant has the burden of proving by a preponderance of the evidence that its agent acted in good faith."

We reject Ollice's contention. The portion of instruction number three is in accord with our decision in *Alyeska Pipeline Service Company v. Aurora Air Service,* 604 P.2d 1090, 1095 n. 7 (Alaska 1979).[16] In accordance with *Aurora Air,* Alyeska had the burden of proving that it acted in good faith, that its justification was not a mere pretext, shielding an improper ulterior motive.[17]

15. Although not raised by counsel for Ollice we note that the superior court responded to the jury questions without informing respective trial counsel that it had received these communications from the jury. Thus counsel were not afforded the opportunity to state their positions regarding whether or not any response should be made, and if a response was indicated, the content of any such response.

It is obvious that the preferred practice is for the superior court to inform counsel of communications received from jurors during their deliberations and to afford counsel the opportunity to apprise the court of their respective positions in regard to the communication as well as to any response from the court.

16. Instruction 13 in *Aurora Air* read in part: "[T]he obligation to act in good faith *or with justification* is the obligation not to act mali-

ciously or with the specific intent to injury plaintiff." *Aurora Air, supra* at 1095 n. 7 [emphasis added]. The only difference between this instruction and the instruction in the present case is that Instruction No. 3 does not contain the emphasized words. The deleted words do provide an added degree of clarity, serving to stress that the trial court is discussing the defendants' privilege to interfere. The effect of their absence in the case at bar is in our view minimal.

17. "One is privileged to invade the contractual interest of himself, others, or the public, if the interest advanced by him is superior in social importance to the interest invaded. However, if one does not act in a good faith attempt to protect his own interest or that of another but, rather, is motivated by a desire to injure the contract party, he forfeits the immunity afford-

Ollice also objected to the following portion of instruction number three:

> You are instructed that Alyeska is not required to prove that its agent's actions represented a course of action that you might agree with or find preferable.

We find no merit in Ollice's contention. In *Alyeska Pipeline Service Company v. Aurora Air Service*, 604 P.2d 1090 (Alaska 1979) we approved of an instruction which read in part:

> "With regard to the defendants' 'justification' in this action, you are instructed that defendants are not required to prove that their actions were necessarily correct or represent a course of action that you might agree with or find preferable."

■ Ollice's third objection to the instruction is that it confusingly refers to Koslick rather than Alyeska. The instruction reads in part: "Alyeska may still be liable to plaintiff if you find Mr. Koslick acted in bad faith when he directed plaintiff's removal from the Pump Station 5 guard force." There was some evidence that Koslick's superior, Wellington, was ultimately responsible for Ollice's termination.

The trial court changed two other references of Mr. Koslick to "Alyeska" or "its agents," but preferred to keep the final reference as "Mr. Koslick." This, the superior court thought would be more comprehensible to the jury. "[T]hey've got to have some human bodies up there. It can't be a ghost of Alyeska that does this stuff." Although we do not believe the jury would have been confused by the substitution of "Koslick" with "Alyeska's agents," the instruction did not improperly focus the case on Koslick. In this regard the superior court also instructed the jury that: "Alyeska Pipeline Service Company and American Guard and Alert, Inc. are corporations and consequently can only act through their agents or employees." In our view the jury possessed sufficient intelligence to realize that Alyeska, not Koslick, was the defendant. Furthermore, in our view the reference to Koslick is rendered harmless by various other more general references to Alyeska in the court's instructions.

## IV. Did The Superior Court Err In Refusing To Give The Jury An Instruction on Circumstantial Evidence?

■ Ollice submitted an instruction regarding direct and circumstantial evidence and the inferences which can be drawn from this evidence.[18] Ollice argued that the instruction was crucial because much of the evidence was circumstantial, centering on the motives of Alyeska and Koslick. Other courts have suggested that a special circumstantial evidence instruction is necessary whenever a party's case depends upon circumstantial evidence.[19] In an intentional interference with a contract claim where the defendant poses a valid justification, the strength of the plaintiff's case will of-

ed by the privilege." *Alyeska Pipeline Service Company v. Aurora Air Service*, 604 P.2d 1090, 1094 (Alaska 1979) (citations omitted).

18. The proposed instruction read as follows:

Evidence is all the testimony received from the witnesses, including depositions and the exhibits admitted during the trial and facts agreed to by counsel.

Evidence may be direct or circumstantial, or both.

Direct evidence is the testimony given by a witness who has seen or heard the facts to which he testifies. It includes exhibits admitted into evidence during the trial.

Circumstantial evidence is the proof of facts or circumstances by direct evidence from which you may reasonably infer other related or connected facts which naturally and logically follow, according to the common experience of mankind.

The law makes no distinction between direct and circumstantial evidence as to the degree of proof required; each is accepted as a reasonable method of proof and each is respected for such convincing force as it may carry.

To infer, or to make an inference, is to reach a reasonable deduction of fact which you may but are not required to make from other facts which you find have been established by direct evidence. Whether an inference is made rests entirely with you.

19. *Shepherd v. Walley*, 28 Cal.App.3d 1079, 105 Cal.Rptr. 387, 390–91 (Cal.App.1972); *Pacific Insurance Company of N.Y. v. Frank*, 452 P.2d 794, 797 (Okl.1969); *Buie v. Reynolds*, 571 P.2d 1230, 1234 (Okl.App.1977).

ten depend upon inferences which tend to show an improper ulterior motive. In the present case, there is no direct evidence of improper motive, and Ollice's case relies upon the strength of the inference linking her disparate treatment to some discriminatory ulterior motive.

The question now before us is whether the court's failure to give a special jury instruction on circumstantial evidence constitutes reversible error.[20] Our principal concern is whether the failure to give the instruction was prejudicial to Ollice. *Clary v. Fifth Avenue Chrysler Center, Inc.,* 454 P.2d 244, 249 (Alaska 1969); *Alaska Brick Co., Inc. v. McCoy,* 400 P.2d 454, 456 (Alaska 1965). We must decide whether the jury needed to be told that they were permitted to draw inferences from facts or whether the superior court's instruction that evidence should be viewed in the light of everyday experience sufficiently cover that ground.

Here, the necessity for the instruction was mitigated by the superior court's general instruction to the jury defining evidence and describing how to view it. The superior court advised the jury: "Evidence includes the sworn testimony of witnesses, exhibits submitted into the record, facts agreed to by the attorneys, and facts judicially noted by the court. The evidence should be considered and viewed by you in light of your own observations and experiences in everyday life." In our view, the superior court did not abuse its discretion in concluding that its own, more general instruction was sufficient to inform the jury as to the manner in which it could evaluate circumstantial evidence.[21]

AFFIRMED.

---

**20.** Civil Rule 61 provides:

No error ... in anything done or omitted by the court ... is grounds for granting a new trial or for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order, unless refusal to take

such action appears to the court inconsistent with substantial justice.

**21.** Assuming, arguendo, that the superior court's failure to give the requested circumstantial evidence instruction was error, such error was harmless in light of this record.