**Izaz Elvin KHAN, Appellant,**

v.

**STATE of Alaska, Appellee.**

No. A-9552.

Court of Appeals of Alaska.

April 3, 2009.

---

G. Blair McCune, Anchorage, for the Appellant.

W.H. Hawley Jr., Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Talis J. Colberg, Attorney General, Juneau, for the Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and BOLGER, Judges.

## OPINION

MANNHEIMER, Judge.

Izaz Elvin Khan was convicted of perjury [1] for knowingly making false statements under oath in an application for court-appointed counsel (*i.e.*, knowingly under-reporting his assets and income). In this appeal, Khan challenges the superior court's denial of his motion for a change of venue, as well as some of the superior court's evidentiary rulings and one of the jury instructions (the instruction dealing with the requirement of jury unanimity).

For the reasons explained here, we conclude that Khan waived his right to challenge the superior court's venue ruling because he did not renew his motion following jury selection. We further conclude that the superior court's evidentiary rulings are supportable. With regard to the challenged jury instruction on unanimity, we agree with Khan that it was erroneous, but we conclude that Khan was not prejudiced by this error. Accordingly, we affirm Khan's conviction.

### Underlying facts

In October 2004, Khan was being held in the Unalaska jail on unrelated criminal charges. Khan asked the jailor for the paperwork necessary to apply for court-appointed counsel. Khan completed this paperwork, including the required financial statement, and he signed this document under oath. This document contained an explicit warning (just above the signature line) that "[m]aking false statements under oath is a crime". Khan signed the document in front of the jailor, and the jailor notarized Khan's signature.

As part of his financial statement, Khan provided information about his current income, his past income, his current and past employment, and his assets. In the financial statement, Khan declared that he was not currently working, and that he had not worked for the preceding three years (specifically, since September 2001). In the space provided for a list of employers in the past year, Khan listed "None". Khan also declared that he had no current monthly income, and

that he had received no income during the preceding twelve months. In the portion of the financial statement labeled "Cash and Assets", Khan left the majority of the questions blank, and he answered "None" on the line where he was supposed to give the total value of his assets. Khan repeatedly answered "no" or "none" on the lines calling for him to give the amount of his income and to list the values of his assets.

The truth was that Khan had worked sporadically since mid–2001. According to records kept by the Alaska Department of Labor, Khan worked during twelve of the thirteen fiscal-year quarters between September 2001 and October 2004. Khan had also been employed by at least two different employers during the twelve months immediately preceding his act of applying for appointed counsel.

Moreover, according to records kept by the Alaska Division of Motor Vehicles, Khan owned a vehicle (a Toyota pickup truck) at the time he applied for appointed counsel.

Based on these facts, Khan was indicted on one count of perjury. This count was based on the various false statements in the financial affidavit.

### The motion for change of venue

■ Before trial, Khan's attorney asked the superior court to move Khan's trial out of Unalaska. In this motion, the defense attorney alleged that Khan was notorious in Unalaska as an "outspoken, unpopular advocate for Pakistani issues". The defense attorney argued that, due to community prejudice against Khan, it would not be possible for Khan to receive a fair trial in Unalaska.

The trial judge, Superior Court Judge Sharon L. Gleason, denied this pre-trial motion, but did so without prejudice to Khan's right to raise the venue issue again during or after jury selection.

Khan's attorney never renewed the motion for a change of venue, and Khan's trial was held in Unalaska.

1. AS 11.56.200(a).

■ Under Alaska law, a criminal defendant's failure to renew a request for a change of venue based on adverse pre-trial publicity or community sentiment is deemed a waiver of the request.[2] Accordingly, we affirm the superior court's denial of Khan's motion to change venue.

*The evidence of Khan's earlier false statements to the Department of Labor when applying for unemployment benefits*

■ Before trial, the State asked for permission to introduce evidence that Khan had "knowingly withheld material facts" (*i.e.,* facts pertaining to his employment and income over a period of five months in 2003) when he applied for unemployment benefits from the Department of Labor.

Initially, the State did not ask for permission to use this evidence in its case-in-chief, but rather sought permission to use the evidence if Khan testified and offered a defense based on mistake or innocent intent. However, during trial, the State altered its request and asked for permission to introduce this evidence in its case-in-chief. The State asserted that, based on Khan's attorney's questions to the jury panel during voir dire, it was obvious that Khan would be relying on a defense of mistake or innocent intent.

Judge Gleason concluded that evidence of Khan's prior fraudulent unemployment-benefit claims was relevant to the perjury case for reasons other than to prove Khan's character—and that the proposed evidence was therefore admissible under Alaska Evidence Rule 404(b)(1). However, Judge Gleason also instructed the jury that this evidence could be used only "for the limited purpose of deciding ... [Khan's] knowledge, plan, or absence of mistake".

On appeal, Khan argues that this evidence was not admissible under Evidence Rule 404(b)(1) because it had no relevance other than to prove "propensity"—that is, no relevance other than to show (1) that Khan was a person who characteristically committed fraud, and (2) that Khan probably acted true

to character during the incident being litigated in this case.

We disagree. Khan's defense at trial was a combination of mistake and innocent intent (*i.e.,* a lack of intent to defraud). During the defense attorney's summation to the jury, she argued that Khan was emotionally distraught at the time of his arrest on the unrelated charges—and that, when Khan filled out the financial affidavit, he either mistakenly or carelessly answered that he had no income or assets. The State's evidence of Khan's prior fraudulent claim for unemployment benefits was directly relevant to rebut this defense. This evidence was relevant to negate Khan's assertion that his responses were the result of mistake or carelessness.

According to the State's offer of proof (*i.e.,* the factual assertions in the State's application to present this evidence), Khan was involved in administrative proceedings with the Department of Labor in January 2004 concerning allegations that he fraudulently applied for unemployment benefits. The Department's claim of fraud was based on Khan's failure to report his employment and earnings during five months in 2003. Thus, when Khan applied for court-appointed counsel in October 2004, he had recently litigated allegations that he fraudulently concealed employment and income. This fact made it much less likely that Khan acted innocently or negligently when, in the financial affidavit he submitted to support his request for counsel, he reported that he had no income and no employment between September 2001 and October 2004.

For these reasons, we uphold Judge Gleason's ruling that the evidence was admissible under Evidence Rule 404(b)(1).

Khan also argues that even if this evidence was admissible under Rule 404(b)(1), Judge Gleason nevertheless should have found that its potential unfair prejudice outweighed whatever probative value it had, and that the evidence should therefore have been excluded under Evidence Rule 403.

**2.** *Mallott v. State,* 608 P.2d 737, 748 (Alaska 1980); *West v. State,* 923 P.2d 110, 114 (Alaska App.1996); *Alexander v. State,* 838 P.2d 269, 273 (Alaska App.1992); *Wylie v. State,* 797 P.2d 651, 656 (Alaska App.1990).

This balancing of probative value versus potential for unfair prejudice is entrusted to the discretion of the trial judge.[3] Here, Judge Gleason recognized that the challenged evidence had a potential for unfair prejudice, and (for this reason) she gave the jury a cautionary instruction that explained the limited purposes for which the jurors could properly consider this evidence. Reasonable judges could conclude that this was a satisfactory way to balance the State's need for the evidence against its potential for unfair prejudice.

In sum, we conclude that Judge Gleason did not abuse her discretion when she allowed the State to introduce this evidence.

*Khan's request to introduce evidence that he would have qualified for court-appointed counsel even if he had filled out the financial affidavit truthfully*

Before trial, the State asked Judge Gleason to preclude Khan from introducing evidence that he would have qualified for court-appointed counsel even if he had truthfully listed his income and assets in the financial affidavit.

Judge Gleason concluded that any such evidence would not be relevant to the issue of whether Khan knowingly lied when he filled out the financial affidavit. For this reason, she ruled that Khan's attorney would not be allowed to introduce evidence concerning the financial qualifications for obtaining court-appointed counsel.

The question of whether Khan would have qualified for court-appointed counsel if he had given truthful answers concerning his financial situation had (at best) only peripheral relevance to the issue to be decided by the jury: to wit, whether Khan knowingly gave false answers when he filled out the financial affidavit. Moreover, Judge Gleason could reasonably conclude that, in all probability, the primary effect of such evidence

would be to suggest that the jury should overlook Khan's crime because his false answers caused no financial harm to the State. For these reasons, we conclude that Judge Gleason did not abuse her discretion when she excluded this evidence.

Khan appears to argue (in a footnote to his brief) that Judge Gleason's ruling denied him due process of law because it prevented him from presenting evidence favorable to his case. But we have repeatedly held that a defendant's right to due process of law is not abridged when a trial judge correctly concludes that the defendant's proposed evidence is not admissible under the rules of evidence.[4]

*The jury instruction on the requirement of unanimity*

At Khan's trial, the State presented evidence of the falsity of four separate statements in Khan's financial affidavit. Without objection from the defense (other than the defense attorney's comment that the instruction was "not necessary"), Judge Gleason instructed the jurors that they could convict Khan of perjury if each of the jurors concluded that at least one of these four statements was knowingly false—even if there was no unanimous agreement as to the falsity of any particular statement.

On appeal, for the first time, Khan argues that this instruction was improper—that it was unlawful for the jury to convict him unless the jurors reached unanimous agreement concerning which statement or statements were knowingly false.

When a jury instruction is challenged for the first time on appeal, the party challenging the instruction must show plain error.[5] In the context of jury instructions, "[p]lain error exists when [the] jury instruction obviously create[d] 'a high likelihood that the jury w[ould] follow an erroneous

---

3. *Bluel v. State*, 153 P.3d 982, 986 (Alaska 2007); *Hawley v. State*, 614 P.2d 1349, 1361 (Alaska 1980).

4. *Cleveland v. State*, 91 P.3d 965, 974–75 (Alaska App.2004) (discussing several cases on this point); *Larson v. State*, 79 P.3d 650, 659 (Alaska App.2003).

5. *Aviation Associates, Ltd. v. TEMSCO Helicopters, Inc.*, 881 P.2d 1127, 1131 (Alaska 1994); *Wylie v. State*, 797 P.2d 651, 661 n. 8 (Alaska App.1990).

theory resulting in a miscarriage of justice'." [6]

In its brief to this Court, the State contends that the four false statements were simply alternative ways in which Khan might have committed the single offense of perjury when he swore to the truth of the financial affidavit. Thus, the State reasons, the jurors did not have to agree on the precise theory (*i.e.*, the precise statement) by which Khan's conduct was an act of perjury. Rather, the jurors simply had to agree that Khan's making of the false affidavit was an act of perjury because the affidavit contained one or more knowingly false statements.

The problem with the State's approach is that it rests on the premise that a person commits only one act of perjury, no matter how many false statements the person makes during a single hearing or in a single document. Indeed, the State expressly asks this Court to interpret the perjury statute as meaning that "multiple false statements in a single document can support [only] one conviction".

The State bases this assertion on the legislative commentary to AS 11.56.240(1), the statute which codifies the definition of "statement" for purposes of the perjury statutes (AS 11.56.200–230). According to AS 11.56.240(1), a "statement" means "a representation of fact". The accompanying legislative commentary says basically the same thing, except that the commentary uses the word "any" instead of "a". Thus, the commentary declares that a "statement" means "any representation of fact".[7]

According to the State, this seemingly inconsequential variation in language between the statute and the commentary actually changes the definition of the offense of perjury. The State argues that, because the commentary uses the phrase "any representation" (instead of "a representation"), the legislature must have meant that a charge of perjury can be based on the theory that, in a

single document or during a single trial or evidentiary hearing, the defendant made one or more knowingly false statements. Accordingly, the State asserts that when a jury decides whether the defendant is guilty of perjury, the jurors need not agree on which of the defendant's statements were knowingly false, as long as every juror concludes that the defendant made at least one knowingly false statement.

There are two problems with the State's position.

First, the commentary to the perjury section in the Tentative Draft of the Alaska Criminal Code demonstrates that the drafters used the phrase "any representation of fact" for two reasons: first, to clarify that the new perjury statute extended to false statements concerning a person's belief or memory; and second, to distinguish the new perjury statute from Alaska's former perjury statute, which required proof that the defendant's false representation of fact was material.[8]

Second, the State's position appears to be contrary to the law on this issue. As this Court noted in *Machado v. State*, 797 P.2d 677 (Alaska App.1990),

[there is] substantial [judicial] authority allowing a defendant to be convicted on multiple counts of perjury where the perjury occurred at a single hearing and [even when] the factual difference between the perjurious statements is slight. *See Commonwealth v. Gurney*, 13 Mass.App. 391, 433 N.E.2d 471, 475 (1982). *Cf. DeMan v. State*, 677 P.2d 903, 906 (Alaska App.1984) (no double jeopardy violation for similar perjury which occurred at different proceedings).

*Machado*, 797 P.2d at 687.

Although this Court has never issued a definitive ruling on this legal question, we note that in *York v. State*, 757 P.2d 68, 73 (Alaska App.1988), we upheld separate perjury convictions based on various statements

---

6. *Aviation Associates, Ltd. v. TEMSCO Helicopters, Inc.,* 881 P.2d at 1131 n. 7 (Alaska 1994), quoting *Ollice v. Alyeska Pipeline Service Co.,* 659 P.2d 1182, 1185 (Alaska 1983).

7. Commentary to the Alaska Revised Criminal Code, 1978 Senate Journal, Supplement No. 47 (June 12), p. 72.

8. *Alaska Criminal Code Revision,* Tentative Draft, Part 2 (1977), pages 97–98.

that the defendant made in a single proceeding before the Alaska Workers' Compensation Board, and in *Harrison v. State*, 923 P.2d 107, 109–110 (Alaska App.1996), we upheld separate perjury convictions for two different assertions of fact in the same sworn application for post-conviction relief.

Indeed, the facts of Khan's case are similar to the facts presented in *Harrison*. Khan submitted a single affidavit that allegedly contained four false statements. Our decisions in *Machado*, *York*, and *Harrison* strongly suggest that Khan could have been charged with (and convicted of) four separate counts of perjury, had the State elected to indict him in this manner.

■ The State's position is also contrary to another doctrine of our law: When a defendant is charged with a crime under more than one theory, the jurors need not unanimously agree on the theory that serves as the basis for the defendant's conviction, but the jurors must "unanimously agree that the defendant committed the wrongful deed". *State v. James*, 698 P.2d 1161, 1165 (Alaska 1985). In *James*, our supreme court declared that jurors must "agree upon just what the defendant did; they must all agree that the defendant committed a single offense." *Id.* at 1167.

Thus, in *Covington v. State*, 703 P.2d 436 (Alaska App.1985), this Court held that when a defendant is charged with a single count of sexual abuse of a minor, encompassing repeated acts of sexual abuse over a period of time, the defendant can not properly be convicted unless the jurors unanimously agree on the specific act(s) of abuse that the defendant committed. *Id.* at 440–41.

All of these decisions suggest that Khan may have been entitled to demand an amendment of his indictment so that each alleged false statement in his financial affidavit would be charged in an individual count. We need not decide this issue, because Khan never attacked his indictment as duplicitous (*i.e.*, on the ground that it improperly combined more than one charge).

In any event, Khan would not have been entitled to dismissal of the indictment on this ground—for, as this Court explained in *Carman v. State*, 658 P.2d 131, 139 (Alaska App.1983), the rule against duplicitous counts in an indictment "is a rule of pleading[,] not substance". The remedy for this charging error is not dismissal, but rather a segregation of the improperly joined charges into separate counts in the same indictment. *Id.*

■ Moreover, as the Alaska Supreme Court stated in *Drahosh v. State*, 442 P.2d 44, 48–49 (Alaska 1968), "in the absence of a showing that a defendant's substantial rights were prejudiced ..., an otherwise proper judgment of conviction will not be disturbed because of a duplicitous count in the indictment or complaint."

Thus, even if we assume that Khan was entitled to demand a separate count of the indictment for each alleged false statement, or that Khan was at least entitled to have the jury return special verdicts indicating the jurors' vote on each alleged false statement, the real issue in Khan's case is whether his substantial rights were prejudiced.

This Court confronted a similar situation in *Covington*, a case we mentioned earlier. The defendant in *Covington* was indicted on several counts of sexually abusing a minor, but each count encompassed several acts of alleged abuse over a period of months. 703 P.2d at 438. This Court held that the jury was required to reach a unanimous verdict as to which act or acts Covington committed. *Id.* at 440–41. And because the jury was not apprised of this requirement, we initially reversed Covington's convictions. *Id.* at 441. However, on rehearing, we concluded that this error did not require reversal of Covington's convictions. *See State v. Covington*, 711 P.2d 1183, 1185 (Alaska App.1985).

In our opinion on rehearing, we noted that Covington had not raised this issue in the superior court, and thus the issue was raised as a claim of plain error on appeal.[9] We then noted that, at Covington's trial, he did not raise separate or different defenses to the various alleged acts of sexual abuse. Rather, Covington contended that he never sexually

---

9. *Id.* at 1184.

abused the victim, and that the victim was lying about the whole matter.[10]

Given the way Covington's case was litigated, we concluded that the trial judge's failure to inform the jurors of the need for unanimous agreement concerning one or more instances of sexual abuse "did not appreciably affect any verdict against Covington". *Id.* at 1185.

We reach the same conclusion in Khan's case. We will assume that Khan's jury should have been instructed that they had to reach a unanimous decision regarding each of the four false statements alleged by the State. Nevertheless, this error was harmless.

Khan presented the same defense to each statement. He did not seriously dispute that these statements were false. (Indeed, when the defense attorney presented her summation, she told the jury: "We're not denying that [Khan] did have some income in [the preceding] three years [and] we're not denying that [Khan owned a] pickup truck".) Rather, the defense attorney argued that, due to Khan's anger, fright, agitation, and frustration, he was not paying careful attention to how he filled out the affidavit—and,

therefore, he did not make these false statements "knowingly".

In sum, Khan (like Covington) presented a blanket defense to all of the State's allegations. Khan conceded that he made the four statements identified by the State, and he conceded that these statements were false, but he asserted that he lacked the culpable mental state for perjury. Given this record, we conclude that Khan has not shown plain error. Even if he is right that the jurors should have been instructed on the need for unanimity with respect to each separate statement, the failure to instruct the jurors in this manner did not affect the jury's verdict.

## Conclusion

The judgement of the superior court is AFFIRMED.

---

**10.** *Id.* at 1185.