Dean BLAKE, Appellant,

v.

Gary GILBERT and Haakon Olson, Appellees.

No. S–344.

Supreme Court of Alaska.

July 5, 1985.

Kurt M. LeDoux, LeDoux & LeDoux, Kodiak, for appellant.

Bernd C. Guetschow, Anchorage, for appellees.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

BURKE, Justice.

The main issue in this appeal is whether the dismissal of a corporate plaintiff's action, for failure to pay its corporate tax and file its annual report as required by AS 10.05.720, operated as an adjudication on the merits, so as to bar a subsequent action on the ground of res judicata. The answer turns on whether such dismissal is one "for lack of jurisdiction" within the meaning of Alaska Civil Rule 41(b). Other issues are: (1) whether the trial court erred in granting partial summary judgment under the statute of limitations, (2) whether the court's award of attorney's fees was improper, (3) whether the trial judge should have been disqualified, and (4) whether the court erred in expunging plaintiff's notice of lis pendens.

### I

Diversified Enterprises, Inc. (D.E.I.),[1] brought suit against Gary Gilbert for

---

1. D.E.I., an electrical contracting business, was formed in 1976 by Gary Gilbert, Ernie Mills and Roger Schenk. Gary Gilbert was the director, vice-president, treasurer and major shareholder of D.E.I. Dean Blake held an equitable interest in shares issued to Ernie Mills, and was em-

breach of fiduciary duty and interference with contract rights, and against Haakon Olson for breach of contract. The case was dismissed, without opposition, on October 3, 1977, for D.E.I.'s failure to meet the requirements of AS 10.05.720.[2] The court's order did not specify whether the dismissal was with or without prejudice. Three days later, D.E.I. paid its taxes and filed its annual report, but took no further action regarding the suit.

On March 1, 1978, D.E.I. assigned its claim to Dean Blake.[3] On March 10, 1980, Blake brought a substantially identical action against Gilbert and Olson. Gilbert moved for partial summary judgment on the issue of interference with contract rights, based on the statute of limitations and the nonexistence of a contract between D.E.I. and Swiftsure Seafoods, Inc. (Swiftsure). The trial court granted Gilbert's motion. Blake amended his complaint, deleting the contract interference count, but reserving his right to appeal the trial court's grant of partial summary judgment in favor of Gilbert.

Gilbert and Olson filed a motion to dismiss Blake's amended complaint, which the trial court granted on the ground that the action was barred by the doctrine of res judicata. The court deemed the dismissal in the original D.E.I. suit to be an adjudication on the merits under Civil Rule 41(b).[4] Blake's motion for reconsideration was denied and Blake filed a notice of appeal. Thereafter, the trial court granted the appellees' motion for attorney's fees, award-

ing them $15,000. Blake filed an amended statement of points on appeal to include the issue of attorney's fees.

Subsequent to judgment, Blake filed a motion to disqualify Judge Roy H. Madsen, because Judge Madsen's nephew, Ron Brockman, was one of Gilbert's partners in the ownership of a Kodiak office building. Judge Madsen denied the motion, as did Judge Victor D. Carlson when the matter was referred to him. Earlier, Blake recorded a notice of lis pendens covering property owned by Gilbert. Gilbert filed a motion to expunge the notice of lis pendens, and the motion was granted. Blake filed supplemental points on appeal, regarding the denial of his motion to disqualify Judge Madsen and the granting of Gilbert's motion for expunction of the lis pendens.

## II

The trial court ruled that the dismissal in the D.E.I. suit was involuntary and operated as an adjudication on the merits, under Civil Rule 41(b) and *Jefferson v. Greater Anchorage Area Borough*, 451 P.2d 730, 732 (Alaska 1969). Applying the doctrine of res judicata, the court held that the dismissal order precluded subsequent litigation of the same cause of action.

Under the common law doctrine of res judicata, a judgment in a prior action operates as a bar to a subsequent action if (1) the prior judgment was a final judgment on the merits, (2) a court of competent jurisdiction rendered the prior judgment, and (3) the same cause of action and same

---

ployed by D.E.I. because he had an Alaska inside wiring permit. In 1977 D.E.I. also contracted with Haakon Olson to operate under his wiring permit for two years with a renewal option.

**2.** At that time, AS 10.05.720 provided in part:
No domestic or foreign corporation may commence or maintain a suit, action or proceeding in a court in the state without alleging and proving that it has paid its annual corporation tax last due and has filed its annual report for the last calendar or fiscal year for which the report became due.
The statute has since been amended to read "biennial" rather than "annual" reports and taxes. Ch. 123, § 24, SLA 1980.

**3.** At the time of the assignment, the value of the claim was in question. Apparently, the assignment was made to avoid possible counterclaims against D.E.I. by Gilbert.

**4.** Civil Rule 41(b) provides in part:
Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision and any dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction, for improper venue, or for failure to join a party under Rule 19, operates as an adjudication upon the merits.

parties or their privies were involved in both suits. *Weston Funding Corp. v. Lafayette Towers,* 410 F.Supp. 980, 983 (S.D. N.Y.1976); *see also Aleutian Region R.E. A.A. v. Wolansky,* 630 P.2d 529, 532–33 (Alaska 1981). Here, the second and third elements have obviously been satisfied,[5] but Blake contends that res judicata should not apply because the prior judgment was not rendered on the merits.

> [O]rdinarily, the doctrine may be invoked only after a judgment has been rendered which reaches and determines "the real or substantial grounds of action or defense as distinguished from matters of practice, procedure, jurisdiction or form," and at common law, a dismissal on a ground which did not resolve the substantive merit of the complaint was not a bar to a subsequent action on the same claim.

*Saylor v. Lindsley,* 391 F.2d 965, 968 (2d Cir.1968) (citations omitted).

The court did not hear the substance of Blake's claim and, thus, under common law principles, res judicata does not apply. The involuntary dismissal of D.E.I.'s suit, however, is governed by Alaska Civil Rule 41(b),[6] which operates as an exception to the common law rule. Under Rule 41(b), an involuntary dismissal operates as an adjudication on the merits *unless* the court order specifies otherwise, *or* the dismissal is one for lack of jurisdiction, improper venue, or failure to join an indispensable party. Here, the trial court did not specify whether the dismissal of D.E.I.'s suit was

with or without prejudice. Blake argues that the dismissal was without prejudice because D.E.I.'s failure to comply with the preconditions set forth in AS 10.05.720 was "jurisdictional" within the meaning of Rule 41(b).

In *Costello v. United States,* 365 U.S. 265, 81 S.Ct. 534, 5 L.Ed.2d 551 (1961), the United States Supreme Court interpreted "lack of jurisdiction" broadly in construing an identical federal rule, Fed.R.Civ.P. 41(b). A denaturalization proceeding was dismissed in *Costello* on the ground that the government had not filed an affidavit of good cause. The Court regarded the lack of jurisdiction exception of Federal Civil Rule 41(b) as encompassing dismissals based on a plaintiff's failure to comply with a precondition. The dismissal in *Costello* was, therefore, without prejudice and could not bar a subsequent denaturalization proceeding if the government satisfied the necessary precondition. The Court interpreted Federal Rule 41(b) as *not* intended to alter the common law principle that the disposition of a suit on grounds other than on the merits will not bar another suit. The Court reasoned that the policy behind the rule only bars future actions when "the defendant must incur the inconvenience of preparing to meet the merits because there is no initial bar to the Court's reaching them." *Id.* at 285–86, 81 S.Ct. at 544–45, 5 L.Ed.2d at 564–65.

Blake cites numerous cases and authorities following the holding of *Costello,*[7] in-

---

**5.** There is no dispute that the third element is satisfied. Both suits involve the same cause of action, and D.E.I.'s assignment to Blake of its rights to any potential cause of action against Gilbert and Olson places D.E.I. and Blake in privity with each other.

Blake contends that the second element was not met. He argues that the trial court lacked jurisdiction to decide D.E.I.'s action because D.E.I. lacked standing. Standing is not the issue here. D.E.I. clearly had a "sufficient stake in the controversy," but it lacked the *capacity* to bring suit due to its noncompliance with AS 10.05.720. The statutory divestment of a corporation's capacity to sue does not mean the court lacks jurisdiction over the subject matter or the parties. However, in certain circumstances not present in this case, preconditions to suit must

be satisfied before a court has jurisdiction over the matter. *See, e.g., Segal v. AT & T,* 606 F.2d 842 (9th Cir.1979) (suit dismissed for plaintiffs' failure to pursue administrative process, a precondition to federal court jurisdiction).

**6.** *See supra* note 4.

**7.** *See Johnson v. Boyd-Richardson Co.,* 650 F.2d 147, 149 (8th Cir.1981) (dismissal for failure to name correct party was "dismissal for lack of jurisdiction" and did not bar second suit correctly naming party); *Truvillion v. King's Daughters Hospital,* 614 F.2d 520, 524 (5th Cir. 1980) (dismissal of EEOC job discrimination suit for plaintiff's failure to meet precondition did not operate as an adjudication on the merits and did not bar a subsequent suit between the

cluding the *Restatement (Second) of Judgments*, which states that a judgment for defendant, which rests on plaintiff's failure to satisfy a precondition to suit, does not bar another action by plaintiff after the precondition has been satisfied.[8]

Appellees maintain that lack of capacity to sue due to noncompliance with AS 10.-05.720 is *not* a jurisdictional defect, citing *Jefferson v. Greter Anchorage Area Borough*, 451 P.2d 730 (Alaska 1969). Appellees' argument fails because they misread *Jefferson*. In *Jefferson*, the appellant's suit, questioning the validity of a bond election, was dismissed for failure to state a claim upon which relief could be granted and because the decision in the prior case of *Dale v. Greater Anchorage Area Borough*, 439 P.2d 790 (Alaska 1968) was res judicata. We held that because the trial court's order of dismissal in *Dale* (for plaintiff's failure to file a written notice of contest of election) did not specify otherwise, it operated as an adjudication on the merits under Rule 41(b).

In *Jefferson*, we discussed the fact that even though there was no trial on the merits in *Dale*, res judicata was still applicable, because Dale would have had an opportunity to be heard on the merits if she had filed timely notice. Quoting *Olsen v. Muskegon Piston Ring Co.*, 117 F.2d 163, 165 (6th Cir.1941), we stated:

> A judgment on the merits does not require a determination of the controversy

after a trial or hearing on controverted facts. It is sufficient if the record shows that the parties might have had their controversies determined according to their respective rights if they had presented all their evidence and the court had applied the law. Such an opportunity was afforded the appellant, who did not avail himself of the right.

*Jefferson*, 451 P.2d at 732 (citation and footnote omitted).[9]

The case at bar is easily distinguished from *Jefferson*. D.E.I. satisfied the precondition to suit immediately after the original dismissal; Jefferson, however, like Dale, *never* satisfied the precondition to suit. Thus, in *Jefferson*, the bar was never removed. 451 P.2d at 733 n. 10.

We have two choices in interpreting Rule 41(b): (1) interpret "jurisdiction" narrowly so that a dismissal for failure to comply with AS 10.05.720 "operates" as an adjudication on the merits, even though the substance of the claim was never reached, or (2) interpret "jurisdiction" broadly to include preconditions and other initial bars to suit, where the defendant has not yet incurred any significant prejudice. If we choose the former, a corporation such as D.E.I. would be denied access to the courts despite its subsequent compliance with the statute. This would defeat the purpose of AS 10.05.720, which is to compel compliance with the tax and reporting statutes

---

parties); *Saylor v. Lindsley*, 391 F.2d 965, 969 (2d Cir.1968) (dismissal of prior derivative action by stockholder for failure to post bond-for-cost did not operate as an adjudication on the merits and did not bar a subsequent derivative action by another stockholder); 9 C. Wright & A. Miller, Federal Practice and Procedure § 2373, at 235–37 (1941); *see also* these California cases holding that a dismissal on purely technical grounds cannot be treated as a judgment on the merits: *Gonsalves v. Bank of America Nat. Trust & Savings Ass'n*, 16 Cal.2d 169, 105 P.2d 118 (1940) (dismissal for failure to prosecute); *Ensher v. Ensher, Alexander & Barsoom*, 187 Cal.App.2d 407, 9 Cal.Rptr. 732 (Cal. App.1960) (dismissal for failure to furnish security costs as required by statute). *But see Phillips v. Arizona Bd. of Regents*, 123 Ariz. 596, 601 P.2d 596 (1979) (dismissal for plaintiff's failure to post bond, although not on the merits,

"operated as an adjudication on the merits" under Rule 41(b)).

**8.** Restatement (Second) of Judgments § 20(2) (1982); *Id.* § 20 comment k.

**9.** We accompanied this quote by a citation to *Costello*, where the Supreme Court stated, "there must be at least one decision on a *right* between the parties before there can be said to be a termination of the controversy, and before a judgment can avail as a bar to a subsequent suit...." *Costello*, 365 U.S. at 285, 81 S.Ct. at 544, 5 L.Ed.2d at 564–65 (quoting *Haldeman v. United States*, 1 Otto 584, 91 U.S. 584, 585, 23 L.Ed. 433, 433 (1876)). Appellees maintain this reference constitutes a consideration and rejection of the rule in *Costello*. We disagree. The form of citation, itself, does not indicate a rejection of *Costello*.

rather than to punish the delinquent corporation. Annot., 6 A.L.R.3d 326, 329 (1966). In circumstances where a corporation has complied with statutory obligations *after* an action has been initiated, but *prior* to a final judgment, the weight of authority supports the corporation's right to revive the action, because that right was merely dormant during the period of noncompliance.[10]

■ A corporation's lack of capacity to maintain an action due to nonpayment of taxes is considered a matter in abatement. *Traub Co. v. Coffee Break Service*, 66 Cal.2d 368, 57 Cal.Rptr. 846, 847, 425 P.2d 790, 791 (1967); *Maryland Casualty v. Superior Court*, 91 Cal.App. 356, 267 P. 169, 171 (1928). A matter in abatement, including dismissal for a party's incapacity to sue, only results in a dismissal without prejudice and does not bar a subsequent action. 6 J. Moore, *Moore's Federal Practice* § 56.03, at 56–56 (2d ed. 1983).

This court's per curiam decision in *Gratrix v. Pine Tree, Inc.*, 677 P.2d 1264 (Alaska 1984), comports with the majority view. In *Gratrix*, the corporation, Pine Tree, was not in compliance with AS 10.05.720 when it filed its original complaint. The trial court allowed Pine Tree to amend its complaint after it had complied with the statute, reasoning that "a dismissal of the complaint without prejudice would not prevent refiling, because the statute of limitations had not expired and *any dismissal* would have been *without prejudice.*" *Id.* at 1266 (emphasis added). We affirmed the trial court's decision, holding that a corporation's subsequent compliance with AS 10.-05.720 cures its initial failure, as long as the statute of limitations on the underlying action has not expired. *Id.* at 1267.[11]

Although in *Gratrix* the defect was cured *before* the dismissal, our holding there does not so limit the time within which to accomplish the cure. Other courts have held that even *after* a dismissal for non-compliance with statutory requirements, a corporation may, once it discharges its obligations, refile the same cause of action against the same parties.[12] The courts reason that a dismissal for non-compliance does not constitute an adjudication on the merits; thus, it does not bar a subsequent suit on grounds of res judicata or collateral estoppel. As the Florida Supreme Court stated:

> [A]n adjudication on grounds purely technical, where the merits cannot come into question, is limited to the point actually decided, and does not preclude the maintenance of a subsequent action brought in a way to avoid the objection which proved fatal in the first action.

*Kent v. Sutker*, 40 So.2d 145, 147 (Fla. 1949).[13] Under the holdings of these cases,

**10.** *See Empire Excavating v. Maret Dev.*, 370 F.Supp. 824 (D.C.Pa.1974); *Cirino v. Hess Oil Virgin Islands*, 384 F.Supp. 621 (D.C.V.I.1973); *Gratrix v. Pine Tree, Inc.*, 677 P.2d 1264 (Alaska 1984); *Capin v. S & H Packing*, 130 Ariz. 441, 636 P.2d 1223 (App.1981); *Peacock Hill Ass'n v. Peacock Lagoon Constr.*, 8 Cal.3d 369, 105 Cal. Rptr. 29, 503 P.2d 285 (1972); *Menley & James Laboratories v. Vornado, Inc.*, 90 N.J.Super. 404, 217 A.2d 889 (Ct.Ch.Div.1966); *Tiffany Agency of Modeling v. Butler*, 110 R.I. 568, 295 A.2d 47 (1972); 17 W. Fletcher, Private Corporations § 8538 (1960); Annot., 6 A.L.R.3d 326 (1966); *cf. Paisley Products v. Trojan Luggage*, 293 F.Supp. 397 (W.D.Tenn.1968); *E.C. Vogt, Inc. v. Ganley Bros.*, 185 Minn. 442, 242 N.W. 338 (1932); *Parker v. Lin-Co Producing*, 197 So.2d 228 (Miss.1967).

**11.** *See also King v. Petroleum Servs.*, 536 P.2d 116, 118 (Alaska 1975); *Richardson Vista Corp. v. City of Anchorage*, 14 Alaska 1, 4 (D.Alaska 1952); *Western Elec. v. Pickett*, 51 Colo. 415, 118

P. 988 (1911); *League to Save Lake Tahoe v. Tahoe Regional Planning Agency*, 93 Nev. 270, 563 P.2d 582 (1977); *cf. Alaska Mines and Minerals v. Alaska Indus. Bd.*, 354 P.2d 376 (Alaska 1960) (compliance with AS 10.05.720 *after* the statute of limitations has run does not cure the initial defect).

**12.** *See York and York Constr. v. Alexander*, 296 A.2d 710 (D.C.App.1972); *Cabinet Craft v. A.G. Spanos Enters.*, 348 So.2d 920 (Fla.App.1977); *West Publishing v. Intrastate Pipeline*, 254 So.2d 643 (La.App.1971); *Peerless Corp. v. Chin*, 112 N.H. 3, 287 A.2d 611 (1972); *Tri-Terminal Corp. v. CITC Indus.*, 100 Misc.2d 477, 419 N.Y.S.2d 817 (N.Y.Sup.Ct.1979).

**13.** *See also Fujii v. Dulles*, 259 F.2d 866 (9th Cir.1958) (dismissal in action for declaration of nationality for lack of allegation of prior adverse administrative action was conclusive only on that issue).

a trial court would err if it dismissed a delinquent corporation's suit *with* prejudice.

In *Gratrix*, we stated that there was no policy reason and no sound legal reason to deny court access to a corporation that fulfills its obligations before the statute of limitations runs. 677 P.2d at 1267. Nor are there sound reasons to preclude reinstitution of a suit when a corporation complies *after* dismissal. A dismissal on these grounds is akin to a jurisdictional defect which is only an initial bar to the suit. The plaintiff's ability to prosecute a new action does not prejudice the defendant because he has not incurred any inconvenience in preparing to meet the merits. *Costello,* 365 U.S. at 286, 81 S.Ct. at 545, 5 L.Ed. at 565. Thus, we are persuaded to follow the reasoning of *Costello* and interpret the "lack of jurisdiction" exception to Rule 41(b) broadly to include dismissals due to a corporation's capacity to sue, under AS 10.05.720 or AS 10.05.690.[14] The dismissal of D.E.I.'s suit was not an adjudication on the merits and is not a bar to the present suit by Blake.[15] The trial court erred in ruling to the contrary.

### III

On July 13, 1983, Gilbert moved for partial summary judgment on the issue of interference with contract rights between D.E.I. and Haakon Olson, and between D.E.I. and Swiftsure. The motion was based on the running of the statutory period of limitations and the nonexistence of a contract between D.E.I. and Swiftsure.

**14.** AS 10.05.690 bars foreign corporations which conduct business in Alaska without a certificate of authority from bringing a suit in state court.

**15.** The two year statute of limitations bars Blake's cause of action for interference with contract rights. AS 09.10.070. *See infra* section III, B. The action for breach of fiduciary duty and breach of contract are governed by AS 09.10.100 (10 years for all actions not otherwise provided for) and AS 09.10.050 (6 years for contract actions), respectively, and thus, are not barred.

Since we have concluded that the dismissal of Blake's action on grounds of res judicata must

The trial court granted the motion, but did not specify its grounds.

### A. *Did Gilbert Waive The Defense of Statute of Limitations?*

Blake argues that Gilbert waived the affirmative defense of statute of limitations because he did not plead it in his initial answer. Gilbert cites three Alaska cases for the proposition that the failure to plead limitations constitutes a waiver of the defense: *Hitt v. J.B. Coghill, Inc.,* 641 P.2d 211 (Alaska 1982); *Municipality of Anchorage v. Sisters of Providence in Washington,* 628 P.2d 22, 34–35 (Alaska 1981); *Barrett v. Byrnes,* 556 P.2d 1254 (Alaska 1977).

In *Barrett,* the defendant did not plead the defense of limitations, originally or by amendment, nor did she raise it prior to trial, or in her opening statement. Rather, she raised it for the first time after the plaintiff had rested her case. Thus, the defendant waived the defense, by operation of Civil Rule 12(h), which read in part:

> A party waives all defenses and objections which he does not present either *by motion* ... or, ... in his answer or reply ...

(emphasis added).[16] The *Barrett* holding does not apply here. Gilbert did not wait until Blake rested his case. He raised the defense in his July 1983 motion and again in the amended answer of November 1983. Nothing in *Hitt* or *Sisters of Providence* suggests that the defense of limitations is waived if made by way of motion in lieu of pleadings.

be reversed, the trial court's order granting $15,-000 in attorney's fees to Gilbert must be vacated. Even though we affirm the trial court's grant of the partial summary judgment, *see infra* section III, Blake's other causes of action still remain. The determination of the prevailing party under Civil Rule 82, therefore, cannot be made until the entire case is completed.

**16.** The language of Alaska R.Civ.P. 12(h) was later changed. However, the rule still provides that defenses or objections can be raised by motion or in a responsive pleading.

■ The general rule is that a defending party may, *at any time*, move for summary judgment on the basis of the statute of limitations. 6 J. Moore, *Moore's Federal Practice* ¶ 56.17[58], at 56–1058 (2d ed. 1982). While there is some authority that a defendant waives this defense if he fails to plead it and then later asserts it in a motion for summary judgment, "this is an unduly technical holding which sound judicial administration cannot support." *Id.* Moore explains that "this position is not tenable in view of the general purpose of the Rules that decision should go on the merits and not on pleading technicalities, and for the further reason that the Rules prescribe most liberally for the amendment of pleadings." *Id.* ¶ 56.17[4], at 56–737.

At the hearing on the motion for summary judgment, Judge Madsen granted Gilbert's oral motion to amend the answer to add the limitations defense apparently because it would not result in prejudice to Blake.

Blake cites many cases where delays ranging from ten months to four years constituted waivers of the limitations defense. Most of these cases hold that the delay constituted a waiver because of the substantial prejudice which the delay caused the plaintiff; if the defense had been raised earlier, the plaintiff could have instituted his suit in a non-time barred jurisdiction or could have taken other measures to avoid being frozen out completely. *See Hayden v. Ford Motor*, 497 F.2d 1292 (6th Cir.1974); *Strauss v. Douglas Aircraft*, 404 F.2d 1152, 1155 (2d Cir.1968). Here, Blake "did not forego other avenues of relief in reliance on defendant's failure to raise the defense." *Pierce v. County of Oakland*, 652 F.2d 671, 673 (6th Cir.1981) (statute of limitations defense not waived despite three and one-half year delay); *Estes v. Kentucky Utilities*, 636 F.2d 1131, 1134 (6th Cir.1980) (delay alone is insufficient reason to deny motion to amend; no

substantial prejudice in 41 month delay in raising defense).

■ The record is unclear as to what occurred during the more than three year delay in this case. Blake claims he suffered substantial prejudice because he spent $4,000 litigating the case before Gilbert raised the limitations defense. Given Blake's claim that two million dollars is at stake in this litigation, it does not appear that $4000 in litigation costs is prejudice substantial enough to warrant preclusion of the limitations defense in a pretrial motion for summary judgment. *See Pierce*, 652 F.2d at 673; *Estes*, 636 F.2d at 1134; *cf. McGraw v. Matthaei*, 388 F.Supp. 84 (E.D.Mich.1972) (motion made on *last day of trial* to amend pleadings to add limitations defense denied where considerable expense incurred in preparing *and trying case*). We are unable to say that Judge Madsen abused his discretion in allowing Gilbert to raise the limitations defense in the manner and at the time he did.

B. *Was Blake's Action Brought Within the Applicable Limitations Period?*

■ Interference with contract rights or other economic relations is a recognized tort,[17] and the statute of limitations relating to torts generally applies. *See* Annot., 58 A.L.R.3d 1027, 1030 (1974). In Alaska the period of limitations for tort actions involving injury to intangible rights is two years. AS 09.10.070.

■ The parties' dispute concerns the time from which the period of limitations is measured. Blake argues that Gilbert's acts caused repeated and continuing injury and, thus, the limitations period did not begin to run until the date of the last injury. Blake's argument fails. The acts of interference alleged by Blake were one-time occurrences, even though they may have continuing consequences. They are *not* analogous to a continuing trespass or nuisance, where repeated and continued

---

**17.** *See Alyeska Pipeline Serv. v. Aurora Air Serv.,* 604 P.2d 1090, 1093 (Alaska 1979); *Long v.*

*Newby,* 488 P.2d 719, 722 (Alaska 1971).

tortious acts are committed. *See Marcus v. National Life Insurance,* 422 F.2d 626 (7th Cir.1970) (malicious interference with contract caused injury at time of breach; there can be no continuous inducement to carry on continuing breaches).

Blake alleged interference by Gilbert with two separate contracts—the contract between D.E.I. and appellee Haakon Olson, and the contract between D.E.I. and Swiftsure. The act of interference with the contract between D.E.I. and Olson occurred no later than April 11, 1977, when Olson, by a letter to the Division of Occupational Licensing, discounted his association with D.E.I. Gilbert's interference with the alleged agreement between D.E.I. and Swiftsure must have occurred prior to May 1977, when Gilbert entered into an agreement with Swiftsure to design and install the electrical work at Swiftsure's Kodiak plant. Blake initiated his action on March 10, 1980, beyond the period of limitations in both instances. Even if the period is measured from the date of discovery, the claims are still barred. The record reveals that Blake apparently knew of Gilbert's acts by May 1977, and certainly by March 1, 1978, when he obtained D.E.I.'s right to the action.[18]

We affirm the trial court's grant of partial summary judgment on the issue of interference with contract rights.

### IV

▉ Blake's motion to disqualify Judge Madsen was made on two independent grounds: (1) the relationship of Judge Madsen to Ron Brockman, and (2) the alleged personal bias on the part of Judge Madsen. Both arguments were rejected. Blake designated both grounds in his supplemental points on appeal, but addresses only the first in his brief. Thus, we deem the second ground abandoned. *Wetzler v. Wetzler,* 570 P.2d 741, 742 n. 2 (Alaska 1977).

▉ The trial judge has discretion to make the initial determination of disqualifi-

cation, and his decision should be given substantial weight. *Amidon v. State,* 604 P.2d 575, 577 (Alaska 1979). If a trial judge fails to recuse himself, his decision should be reversed on appeal only if it amounted to an abuse of discretion. *Id.* His ruling will not be reversed "unless it is plain that a fair-minded person could not rationally come to [the same] conclusion on the basis of the known facts." *Id.*

We see no abuse of discretion in Judge Madsen's failure to recuse himself, nor in Judge Carlson's later denial of the motion to disqualify Judge Madsen.

AS 22.20.020 provides:

(a) A judicial officer may not act as such in a court of which the judicial officer is a member in an action in which

. . . .

(4) the judicial officer is related to either *party* by consanguinity or affinity within the third degree.

(emphasis added). Under this section, a judge must disqualify himself if he is related to a *party* in the action. Blake argues that Judge Madsen should be disqualified because his nephew, Ron Brockman is a *party.* Brockman is not a named party in the suit, but he and Gilbert, along with several other business partners, own an office building in Kodiak.

▉ There is a split of authority on the proper construction of the term "party" in statutes similar to AS 22.20.020. 46 Am.Jur.2d *Judges* § 143 (1969). In some jurisdictions, "party" is limited to persons who are actually parties of record. Disqualification is not required simply because the judge is related to some person who is or may be interested in the case or affected by the judgment. *E.g., Dow Chemical v. Benton,* 163 Tex. 477, 357 S.W.2d 565 (1962) (attorney with contingent fee contract is not so directly interested in the subject matter of suit to make him a "party"); *Martinez v. Martinez,* 608 S.W.2d 719 (Tex.Civ.App.1980). Other jurisdictions

---

**18.** Having held that summary judgment was properly granted because the period of limitation had run on the action, we need not reach the issue whether there was an on going contractual relationship between D.E.I. and Swiftsure.

construe the term to include anyone whose pecuniary interests may be *directly* affected by the suit, although he is not a party of record and not bound by the judgment. *E.g., Grubstake Inv. Ass'n v. Kirkham*, 10 S.W.2d 184 (Tex.Civ.App.1928) (judge whose father-in-law owned shares in association disqualified to render judgment and appoint receiver for joint stock association). It is important to note, however, that an indirect or uncertain interest is not enough to disqualify a judge. *Hill v. Kesselring*, 310 Ky. 483, 220 S.W.2d 858 (App.1949); *see also* 46 Am.Jur.2d *Judges* § 99 (1969). The tort allegedly committed by Gilbert did not arise out of his partnership with Brockman, nor does the suit involve the partnership property. Under the law of partnership, Blake, as a tort creditor, cannot attach the partnership property. His only remedy is to obtain a "charging order," a type of lien on Gilbert's interest in the firm.[19] As this would only *indirectly* affect Brockman's interests, he should not be considered a "party" to this action.

■ Having decided that Brockman is *not* a party, the next question is whether the fact that he is Gilbert's business partner and Judge Madsen's nephew necessitates disqualification of the judge. The Alaska Code of Judicial Conduct, Canon 3 C(1)(d)(iii) provides:

(1) A judge *should* disqualify himself in a proceeding in which his impartiality might reasonably be questioned, including but not limited to instances where:

. . . .

(d) he or his spouse or a person within the third degree of relationship to either of them, or the spouse of such a person:

. . . .

(iii) is known by the judge *to have an interest that could be substantially affected by the outcome of the proceeding.* (emphasis added).

■ Even accepting Blake's arguments that Brockman's interest in the partnership property *could* be substantially affected by the outcome of the suit,[20] we must address the enforceability of this judicial canon. The canon merely states a judge *should* disqualify himself if his impartiality *might* reasonably be questioned, when a relative has an interest that *could* be substantially affected. "Whether a judge should disqualify himself/herself because of a relationship or connection with a party is a matter confided to the conscience of the judge." *Kimbley v. City of Green River*, 663 P.2d 871, 885 (Wyo.1983) (citing *MacNeil Bros. v. Cohen*, 264 F.2d 186 (1st Cir.1959)).

AS 22.20.020, which uses a more objective test, does *not* mandate disqualification under these circumstances, but only when the relative is a *party*. In 1974, Congress decided that disqualification is appropriate when a relative has an interest that could be affected, and added this as a specific ground for *required* disqualification. 28 U.S.C. § 455(b)(5)(iii) (1982).[21] While making this a required ground for disqualification may be a sound measure, the Alaska legislature has not, as yet, chosen to do so.

**19.** A creditor of an individual partner may not obtain a levy on and sell the partner's specific partnership property. AS 09.38.100(b). The creditor must look to the partner's interest in the partnership. Once judgment is entered, a "court may charge the interest of the debtor partner with payment of the unsatisfied debt." AS 32.05.230(a). *See* A. Bromberg, Crane and Bromberg on Partnership § 43, at 248 (1968).

**20.** Blake's analysis of the affect a judgment for him would have on the partnership between Gilbert and Brockman is not accurate. Blake would *not* become Brockman's new partner, nor would Brockman's interest in the partnership be encumbered by a judgment against Gilbert. *See supra* note 19.

**21.** The text of 28 U.S.C. § 455(b)(5)(iii) is as follows:

He *shall* also disqualify himself in the following circumstances:

. . . .

(5) He or his spouse, or a person within the third degree of relationship to either of them, or the spouse of such a person:

. . . .

(iii) Is known by the judge to *have an interest that could be substantially affected by the outcome of the proceeding.*
(emphasis added). *See generally* Annot., 54 A.L.R.Fed. 855 (1981), discussing this statute.

"The issue of disqualification is a sensitive question of assessing all the facts and circumstances in order to determine whether the failure to disqualify was an abuse of sound judicial discretion." *United States v. Haldeman,* 559 F.2d 31, 139 n. 359 (D.C. Cir.1976), *cert. denied,* 431 U.S. 933, 97 S.Ct. 2641, 53 L.Ed.2d 250 (1977). No abuse of discretion occurred in this case.

V

Blake's attorney recorded a lis pendens [22] in the Kodiak Recording District on all real property in which Gilbert had a direct or indirect interest. Gilbert successfully moved to expunge the lis pendens. By this time the trial court had already dismissed the suit, and Blake had filed his notice of appeal.

■ Generally, when no appeal is taken a dismissal terminates the operation of a lis pendens with respect to that action. 51 Am.Jur.2d *Lis Pendens* § 35, at 982 (1970). However, when an appeal is taken the action is considered to be still "pending" within the meaning of the lis pendens statute. *California—Hawaii Development v. Superior Court,* 102 Cal.App.3d 293, 162 Cal.Rptr. 365 (Cal.App.1980), and the lis pendens remains in effect. *Hidden Meadows Development v. Mills,* 590 P.2d 1244 (Utah 1979). Thus, posting a supersedeas bond or moving to continue the lis pendens pending appeal is not necessary.

■ The superior court has jurisdiction, pending appeal, to expunge the lis pendens. Alaska Appellate Rule 203 provides:

The supervision and control of the proceedings on appeal is in the appellate court from the time the notice of appeal is filed with the clerk of the trial courts.

Rules such as this which divest the trial court of jurisdiction pending appeal apply only to "matters directly or necessarily involved in the matter under review, and [do] not preclude the trial court from proceeding as to collateral or independent matters." 4 Am.Jur.2d *Appeal and Error* § 355, at 834 (1962); *see also Bullock v. Director of Patuxent Institution,* 231 Md. 629, 190 A.2d 789 (Md.App.1963); *Morrison v. Morrison,* 93 N.J.Super. 96, 225 A.2d 19 (Ch.Div.1966) (awarding attorney's fees pending appeal). Expunging a lis pendens is a collateral matter, and the trial court has jurisdiction to do so pending appeal.

■ While AS 09.45.790 does not expressly provide for expunction, we interpret it as providing that a filed notice of lis pendens may be cancelled due to noncompliance with the requirements.

[I]f the litigation in which a formal notice of lis pendens was filed is not such as is contemplated by the statute ... the notice may act as an unwarranted cloud on the title to the property therein. Such a situation comes within the general rule authorizing the courts to order a formal notice of lis pendens to be expunged.... It has even been declared that where the complaint in an action in which a formal notice of lis pendens was filed discloses that the litigation in which it was filed is not such as is contemplated by the statute, ... the court has not only the power, but also a duty to expunge the notice.

51 Am.Jur.2d *Lis Pendens* § 37, at 983 (1970) (footnotes omitted); *see also Allied Eastern Financial v. Goheen Enterprises,* 265 Cal.App.2d 131, 71 Cal.Rptr. 126 (Cal.App.1968); *Will of Sabatino,* 90 Misc.2d 56, 393 N.Y.S.2d 671 (N.Y.Surr.Ct.1977).

The filing of lis pendens is authorized only in actions "affecting the title to or the right of possession of real property." AS 09.45.790. In *Will of Sabatino,* the New

---

**22.** Alaska's lis pendens statute, AS 09.45.790, provides in part:

In an action affecting the title to or the right of possession of real property, the plaintiff at the time of filing the complaint, or afterwards, ... may record in the office of the recorder of the recording district in which the property is situated a notice of the pendency of the action, containing the names of the parties, and the object of the action or defense, and a description of the property affected in that district. From the time of filing the notice for record, a purchaser, holder of a contract or option to purchase, or encumbrancer of the property affected has constructive notice of the pendency of the action....

York Surrogate's Court interpreted a similarly worded lis pendens statute as follows:

> Since a lis pendens is a provisional remedy and is viewed as an extraordinary privilege, courts have demanded strict compliance with the statutory requirements. Thus, the propriety of a lis pendens must stand upon the allegations in the pleadings, and the court should look to the primary purpose of the action, as set forth in the complaint or counterclaim.

393 N.Y.S.2d at 673. *See generally* 51 Am.Jur.2d *Lis Pendens* § 17, at 963 (1970).

The primary purpose of the present action, as set forth in Blake's amended complaint, is to recover for injuries inflicted on D.E.I. by Gilbert's alleged breach of fiduciary duty and Olson's breach of contract. Even though Blake seeks all equitable relief to which he may be entitled, including an accounting for all profits that may be traced to Gilbert's properties listed in the notice of lis pendens, the allegations in the complaint do not support a notice of pendency of an action "affecting the title to or the right of possession of real property." *See Brownlee v. Vang,* 206 Cal.App.2d 814, 24 Cal.Rptr. 158 (Cal.App.1962) (lis pendens not appropriate where complaint alleged injury due to false representations and plaintiff sought constructive trust over realty in which the profits from the alleged tort had been invested); *see also Will of Sabatino,* 90 Misc.2d 56, 393 N.Y.S.2d 671 (N.Y.Surr.Ct.1977) (petition to compel executrix to account and render an account of proceedings did not fall within the purview of the lis pendens statute); *cf. Clopine v. Kemper,* 140 Colo. 360, 344 P.2d 451 (1959) (lis pendens proper when plaintiff in divorce action sought an equitable share of real property).

 A lien which results merely from an ultimate entry of a judgment provides no basis for the filing of a lis pendens notice. *Rehnberg v. Minnesota Homes,* 236 Minn. 230, 52 N.W.2d 454, 456 (1952) (lis pendens not supported where plaintiff alleged breach of contract, prayed for an accounting and demanded that any amounts due be declared a lien on property); *see also Cutter v. Cutter Realty,* 265 N.C. 664, 144 S.E.2d 882 (1965); *Otten v. Birdseye,* 527 P.2d 925 (Colo.App.1974). *See generally* 51 Am.Jur.2d *Lis Pendens* § 21, at 968 (1970). The present action does not directly affect "the title to or right of possession of real property." Nor did Blake seek an equitable lien on this specific property. Thus, Blake's lis pendens was properly expunged.

AFFIRMED in part, REVERSED in part, and REMANDED for a trial on Blake's causes of action for breach of fiduciary duty and breach of contract.