**Dannielle LITTLETON, Appellant,**

v.

**Robert BANKS, Jr., Appellee.**

No. S–12508.

Supreme Court of Alaska.

Sept. 12, 2008.

David R. Edgren, Edgren Law Offices, LLC, Anchorage, for Appellant.

Kathleen A. Weeks, Law Offices of Kathleen A. Weeks, Anchorage, for Appellee.

Before: FABE, Chief Justice, MATTHEWS, CARPENETI, and WINFREE, Justices.

## OPINION

CARPENETI, Justice.

## I. INTRODUCTION

A father moved to modify a shared custody arrangement so that he could relocate with his daughter to another town. The superior court granted sole legal and primary physical custody to the father. The mother contends that the superior court erred by relying primarily on a report prepared by a court-appointed custody investigator who failed to notify the court upon her appointment that she had recently traveled to Peru with the father's attorney. Because the court's findings were sufficiently supported by evidence other than the custody report, we conclude that any error in relying on the custody investigator's report was harmless. We therefore affirm the lower court's award of custody.

## II. FACTS AND PROCEEDINGS

Dannielle Littleton and Robert Banks (Bob) met sometime around 1997 when Bob started to treat Dannielle at his chiropractic practice. They married in 2000. At the time Dannielle had two young sons from previous relationships, one born in 1997 and one born

in 1999. Dannielle gave birth to the couple's only child, a daughter, in October 2000.

Both of Dannielle's sons have behavioral problems resulting from multiple mental health issues. Her older son has been diagnosed with "Bipolar Disorder, ADHD, PTSD, and Oppositional Defiant Disorder," and his treating psychiatrist reported that he experienced "command auditory hallucinations, directing him to murder himself and others, and the devil was telling him to do so." The younger boy has been diagnosed with "Bipolar Disorder, manic, severe (provisional); ADHD; PTSD; Oppositional Defiant Disorder; and Encopresis." In addition to his diagnosed psychiatric issues, this child had difficulty getting along with his sister, Dannielle and Bob's daughter.

Several reports by the Office of Children's Services (OCS) were filed regarding Dannielle and Bob's care of the boys. These included reports against Dannielle after the younger boy was born positive for marijuana and reports against Bob for striking both boys. There were also OCS reports of domestic violence between Dannielle and Bob.

Dannielle and Bob divorced in May 2004; their daughter was three years old at the time. The court granted Bob legal custody of the child and granted Dannielle and Bob shared physical custody. Under the shared physical custody arrangement Bob had the child five days a week and Dannielle had her two days a week. In its Findings of Fact and Conclusions of Law, the court reasoned that Bob was the more appropriate sole legal and primary physical custodian because Dannielle had to focus her energy on her "extremely active and very demanding" sons as well as substance abuse treatment and pursuit of her education and career. The court advised Dannielle that "[w]hen [the child] begins kindergarten, if [Dannielle] is able to demonstrate that she has remained in compliance with the recommendations of her substance abuse treatment providers and mental health care professionals . . . a motion to modify custody may be considered based upon an analysis of the best interests of the child."

Just over a year later Bob filed his "Motion to Modify Custody and Motion to Change Child's Residence to Sitka." Bob sought permission from the court to move so that he could take over a chiropractic practice in Sitka.[1] Bob also filed his "Motion to Reappoint the Custody Investigator Originally Appointed," requesting that the court reappoint custody investigator Susan Arth. Dannielle opposed both motions. The court granted Dannielle's request for an evidentiary hearing on the matters, but denied Bob's motion for expedited consideration.

The matter proceeded before a standing master. The master issued her findings on December 13, 2005. These findings included the master's recommendation to reappoint Arth as custody investigator. In her response to the master's findings, Dannielle withdrew her opposition to Arth's reappointment. The court subsequently reappointed Arth.

Arth filed her report in May 2006. The forty-one page report, the longest that Arth had ever submitted to a court, recommended that the court grant Bob sole legal custody and primary physical custody.

Following the submission of the report the standing master resumed the child custody proceedings. The master requested that the hearing be moved to the superior court. The court heard testimony for three days in September and October 2006. While being questioned on cross-examination, Arth revealed that she had organized and participated in a ten-person tour to Peru that included Bob's attorney, Kathleen Weeks. This trip occurred in the summer of 2004, after Arth's initial custody report but before Bob's motion for her reappointment as custody investigator. As a result of this undisclosed relationship, Dannielle moved to strike Arth's report. The court denied the motion, finding that "the custody investigator was thoroughly cross-examined on the content of her report and on her impartiality. She credibly testified that the contacts she has had with Ms.

---

1. Bob's deal with the Sitka chiropractic office fell through and he then decided instead to buy a practice in Kodiak.

Weeks did not influence her recommendations."

Based upon evidence presented during trial and Arth's recommendations, the court granted Bob's motion and awarded him sole legal and primary physical custody the couple's daughter; they now live in Kodiak. The court noted that Dannielle "has done a much better job of meeting the children's emotional needs in the period since August of 2005. However, [Bob] has a longer track record of meeting [the child's] emotional needs."

Dannielle appeals.

## III. STANDARD OF REVIEW

■■■ We will overturn a superior court's child custody determination only if "the entire record demonstrates that the controlling findings of fact are clearly erroneous or that the trial court abused its discretion."[2] We will find clear error where, "after a review of the entire record, we are left with the definite impression that a mistake has been made."[3] The trial court abuses its discretion "where it considers improper factors in making its custody determination, fails to consider statutorily mandated factors, or assigns disproportionate weight to particular factors while ignoring others."[4]

■■ We apply "the abuse of discretion standard to review a trial court's decisions relating to appointment of a child custody investigator and admission of the investigator's report into evidence."[5]

## IV. DISCUSSION

### A. It Was Error To Decline To Strike the Custody Investigator's Report After It Was Revealed that the Investigator Had a Social Relationship with the Father's Counsel.

In November 2003, as part of the divorce proceedings, the court ordered a custody investigation. Under Alaska Rule of Civil Procedure 90.6(a) the superior court "may appoint an expert … to investigate custody, access, and visitation issues and provide an independent opinion concerning the child's best interests." The court-appointed custody investigator, Susan Arth, submitted a report with her recommendations on March 9, 2004. The court followed Arth's recommendations and granted Bob sole legal and primary physical custody of the couple's daughter. In addition, the court explicitly adopted certain recommendations from Arth's report, including the provision that the child never be left alone with her brothers.

On July 25, 2005, Bob's counsel, Kathleen Weeks, moved for Arth's reappointment to the case to conduct an updated investigation. Although Arth had moved out of state after her first investigation, Weeks's affidavit stated that "Arth has indicated a preliminary willingness to do this on an expedited basis and anticipates being in the Anchorage area sometime in August." Dannielle initially opposed Arth's reappointment. Dannielle reasoned that Arth's initial investigation was too costly, Arth had since moved out of state, and Arth would be rushed during her short time in Anchorage and forced to rely on preconceived notions. Dannielle further asserted that she was "bothered by the appearance given by Plaintiff and/or his attorney having been in contact with Arth in advance of making the motion." The court signed an order denying Bob's motion to reappoint Arth. Dannielle ultimately withdrew her objection to Arth's reappointment, conceding that such an appointment was "well-warranted given the developments in this case over the past several months." The court reappointed Arth in January 2006.

Arth issued her custody report in May 2006 and testified at the trial court proceedings in September 2006. During cross-examination, Arth revealed that Weeks "was part of a group of 10 people who [Arth] went on a tour of Peru with." The trip occurred in the summer of 2004, which was after Arth's ini-

2. *Harvey v. Cook,* 172 P.3d 794, 797 (Alaska 2007).

3. *Thomas v. Thomas,* 171 P.3d 98, 102 (Alaska 2007).

4. *Id.* (internal citations omitted).

5. *Ogden v. Ogden,* 39 P.3d 513, 516 (Alaska 2001).

tial custody report but before her reappointment to the case. Arth did not reveal her contact with Weeks to the court because, as she stated, "I didn't see any need to. If I had, I would have. Certainly the fact that we went on this tour together has no impact on whether I believe Mr. or Mrs. Banks is better able to meet [the child's] needs." Arth further testified that she organized the tour and solicited Weeks to attend the trip because she needed a minimum of ten people to join the tour and Weeks had previously expressed an interest in traveling to Peru. Based on this failure to disclose, Dannielle moved to strike Arth's report, citing Rule 90.6(c). The court denied Dannielle's motion.

Rule 90.6(c) provides: "The custody investigator shall disclose any relationships or associations between the investigator and any party which might reasonably cause the investigator's impartiality to be questioned. This disclosure must be made no later than 10 days after appointment." We have only examined Rule 90.6 on a few occasions and never subsection (c), the subsection at issue here.[6]

We examine first whether Arth's relationship with Weeks is covered by Rule 90.6(c), a question that turns on whether Arth's travel with Weeks qualifies as a relationship between Arth and "any party." Rule 90.6 requires disclosure if the custody investigator has a relationship or association with "any party." Our case law offers little guidance on this question. We have previously examined the definition of the word "party" in the context of judicial disqualification. In *Blake v. Gilbert*,[7] we declined to find an abuse of discretion in the failure of a judge to recuse himself from a case in which a defendant was

a business partner of the judge's nephew.[8] After analyzing divergent case law from other jurisdictions about the construction of the term "party," we declined to extend party status to the judge's nephew because the outcome of the case "would only *indirectly* affect [the judge's nephew's] interest."[9]

Unlike *Blake*—where the lawsuit only indirectly threatened a party's interest—here the parties faced a more direct threat that their interests would be affected. Although Dannielle concedes that "[i]t is plain on its face that a party's attorney is, by definition, not a party," we conclude that this personal association between the custody investigator and Bob's attorney could directly affect Arth's recommendations and therefore have a direct effect on the parties.

Having established that Rule 90.6(c) applies, our inquiry now turns to whether Arth violated the rule by failing to apprise the superior court of her association with Weeks, and whether this relationship reasonably brings into question Arth's impartiality. We previously examined this question in the context of a custody investigator who publicly proclaimed herself an advocate for mothers. In *Ogden v. Ogden*,[10] the appellant father in a child custody case argued that the custody decision should be reversed and the child custody investigator should be disqualified because the investigator demonstrated bias by advertising herself as a "Voice for Women and Children."[11] We agreed that the advertisement created an appearance of bias, but upheld the superior court's decision because it was clear that it was based on the evidence introduced at trial rather than the investigator's report.[12] We explicitly noted that "a court-appointed child custody investigator is

**6.** Only four Alaska cases discuss Rule 90.6. *Iverson v. Griffith*, 180 P.3d 943, 947–48 (Alaska 2008) (referencing Rule 90.6(a) and discussing appointment of child custody investigator); *Koller v. Reft*, 71 P.3d 800, 809–10 (Alaska 2003) (discussing Rule 90.6(i), which requires parties to split costs for custody investigators unless court finds good cause to change this allocation); *In re Adoption of L.E.K.M.*, 70 P.3d 1097, 1105 (Alaska 2003) (referencing Rule 90.6(b) and (g), and discussing custody investigator's qualifications and alleged *ex parte* contacts); *R.M. v. S.G.*, 13 P.3d 747, 752 n. 15 (Alaska 2000) (referencing Rule 90.6(a) and finding that custody investigators are akin to experts).

**7.** 702 P.2d 631 (Alaska 1985) (overruled on other grounds).

**8.** *Id.* at 640–41.

**9.** *Id.* at 641 (emphasis in original).

**10.** 39 P.3d 513.

**11.** *Id.* at 515.

**12.** *Id.* at 517.

ordinarily subject to disqualification upon a showing of either actual or apparent bias."[13]

■ Rule 90.6(c) required Arth to disclose within ten days of her appointment any relationship that could bring her impartiality into question. Even if Arth's investigation, as she testified, was not biased by her travels with Weeks, she was still obligated to reveal that relationship because it could lead to the appearance of bias. As *Ogden* reasoned: "[T]he litigant's initial suspicions [of bias] would be likely to jeopardize the reliability of the investigation; for the effectiveness of the process itself largely depends on the confidence and trust of all interested parties."[14] For this reason, after-the-fact judicial determination of the expert's neutrality does not repair the original damage and cannot excuse the initial failure to disclose. We therefore conclude that it was error to fail to strike the custody investigator's report when her relationship with counsel for one of the parties was disclosed.

**B. There Was Sufficient Evidence, Aside from the Custody Investigator's Report, To Support Granting Custody of the Couple's Daughter to the Father.**

■ In making its custody determination, the superior court relied on Arth's report as well as witness testimony and medical records. Because we hold above that it was error to admit the custody investigator's report and to rely upon its recommendations, we examine this issue without reference to Arth's report and by looking only to other evidence presented at trial.[15]

**1. The court's detailed analysis and thorough findings—considered without reference to the Arth report—supported its conclusion that Bob should have sole legal custody.**

■ Alaska Statute 25.24.150(c) instructs courts to determine custody by considering nine "best interest" factors.[16] The superior court examined each of these nine factors. For each factor it described the pertinent facts and analyzed whether the factor favored Bob, Dannielle, or neither parent. The court's best interest findings were thorough and careful; we conclude that the court did not err in its analysis.

The court's detailed analysis of all the best interest factors led it to conclude that each factor either favored granting custody to Bob or did not favor either party. Of the three factors that favored Bob—the three that Dannielle challenges in her appeal—the court supported its analysis with evidence in the record.

The court's most extensive analysis dealt with the ability of each parent to meet the

13. *Id.* at 516–17.

14. *Id.* at 517.

15. Dannielle requests a remand for a new consideration of the modification motion without the child custody investigator's report or evidence. She does not seek a direction to the trial court to appoint a new child custody investigator or to hold a new hearing. Thus, we conclude that our own review of the record without the child custody investigator's input is appropriate.

16. These factors include:
(1) the physical, emotional, mental, religious, and social needs of the child;
(2) the capability and desire of each parent to meet these needs;
(3) the child's preference if the child is of sufficient age and capacity to form a preference;
(4) the love and affection existing between the child and each parent;
(5) the length of time the child has lived in a stable, satisfactory environment and the desirability of maintaining continuity;
(6) the willingness and ability of each parent to facilitate and encourage a close and continuing relationship between the other parent and the child, except that the court may not consider this willingness and ability if one parent shows that the other parent has sexually assaulted or engaged in domestic violence against the parent or a child, and that a continuing relationship with the other parent will endanger the health or safety of either the parent or the child;
(7) any evidence of domestic violence, child abuse, or child neglect in the proposed custodial household or a history of violence between the parents;
(8) evidence that substance abuse by either parent or other members of the household directly affects the emotional or physical well-being of the child; and
(9) other factors that the court considers pertinent.

child's emotional needs. The court found that the "most significant factor in weighing the parties' respective abilities to provide for [the child's] physical safety and emotional well being arises from [Dannielle's sons'] mental health histories." Dannielle contends that the court erred by relying on this evidence because it was presented through Arth's report. Although Arth's report covers the history of the boys' illnesses in great detail, their mental health and behavioral difficulties were presented elsewhere during the trial. In fact, much of the information about the boys' behavior was presented during Dannielle's testimony. For instance, the court noted that since the 2004 custody order both boys had been hospitalized at North Star Hospital for their troubling psychiatric disorders. Dannielle testified to this fact in the hearing. The court admitted the boys' medical records as exhibits. In addition, Dr. Michael Robertson, a licensed psychiatrist from the North Star Hospital who treated Dannielle's sons, testified regarding his treatment of the boys. Dannielle's mother testified that she witnessed Dannielle's older son's sexualized behavior and that she had seen the younger boy bite his brother. While both Dannielle's mother and Dr. Robertson testified that the boys do not present a risk of harm to their sister, they still offered sufficient evidence for the court to conclude that the boys' behavioral difficulties may make it difficult for Dannielle to provide a safe and emotionally supportive environment for her daughter while also attempting to handle her sons. The court thus did not clearly err on this issue.

The court also found that the stability and continuity factor favored Bob. While Dannielle's living situation at the time of trial was stable, the court noted that she had a history of unstable living situations. Dannielle contends that the court erred in its conclusion because Bob's move to Kodiak, away from Anchorage where the two parties were able to share custody, demonstrates that Dannielle offered a more stable and continuous environment for her daughter. But the court had ample evidence to reach the opposite conclusion: that Bob would be able to provide a more stable and continuous living situation for the child. Before moving to Kodiak, Bob had lived in the same house since before the child's birth. Bob testified that he intends to stay in Kodiak for an extended period to raise his daughter, and his purchase of a chiropractic business there supports his intention to establish roots in the community. Dannielle, even though currently in a stable living environment (she has remarried), had previously maintained a more itinerant lifestyle. These facts are supported by evidence independent of Arth's second report. For example, Arth's initial custody report, which has not been challenged and which was adopted by the court's initial custody determination, noted that Dannielle had lived in four residences in the preceding five years and had worked for six employers in five years.

Finally, the court found that the "substance abuse" factor favored Bob because "[t]he concerns regarding [Dannielle's] substance abuse are more significant than the history of [Bob's] substance abuse, primarily because the evidence establishes that [Dannielle] has abused alcohol since the time she completed alcohol treatment." Dannielle counters that the court erred on this issue because it found that there was no evidence of alcohol abuse since 2005. She contends that the superior court further erred by finding this a strike against her when Sharol Ledin—Bob's current girlfriend and occasional child care provider for his daughter—also drinks occasionally despite admitted past alcohol abuse. The evidence supports the superior court's conclusion. Dannielle admitted that she had reported to her son's doctor that even after ending her substance abuse treatment she was drinking more to help her sleep. She also testified that she received the treatment she "was required to receive" by the courts, but no longer attends Alcoholics Anonymous meetings now that she has fulfilled her requirements. Ledin, also an admitted recovering alcoholic, testified to voluntary treatment, infrequent drinking, and continued attendance at Alcoholics Anonymous meetings. Because Dannielle has a high burden to overcome, and because there is evidence independent of Arth's report to support the courts's findings, the court did not clearly err by concluding that this factor

favors Bob and that Dannielle's substance abuse problems pose more of a threat than Ledin's.

Of the three factors that the court found favored Bob, the court had ample evidence beyond Arth's report to support its conclusion. The court supported its findings with this evidence apart from the evidence in Arth's report, and therefore had sufficient grounds to reach these conclusions.

### 2. The court did not err in granting Bob sole legal custody despite Alaska's preference for joint legal custody.

The court awarded Bob sole legal custody of his daughter, finding that "[t]he parties' ability to cooperatively communicate has not improved since the time of the original order." Dannielle contends that the court erred in granting Bob sole legal custody in light of Alaska's preference for granting parents joint legal custody. Dannielle concedes that she and Bob continue to have communication difficulties, but argues that the court erroneously ignored the best interest factors in making its custody determination.

The court stated that the situation had "not improved since the time of the original order." That 2004 order found: "The parties have not done well communicating during the interim period, even about concerns related

to their daughter. . . . The number of interim issues brought to the court for resolution was atypical, and does not bode well for the parties' ability to effectively communicate and cooperate in the short term."

 As Bob correctly notes, joint legal custody depends in large part on the ability of the parents to communicate.[17] Dannielle concedes that communication between the two, which was poor at the time of their divorce, has not improved. Therefore, the court did not abuse its discretion by granting Bob sole legal custody of the child.

### V. CONCLUSION

It was error to admit the custody investigator's report. That error, however, was harmless as the superior court had ample other evidence to support its conclusion. It therefore did not err in granting Bob sole legal and primary physical custody of the parties' daughter. We accordingly AFFIRM the judgment of the superior court.

EASTAUGH, Justice, not participating.

---

17. *See Farrell v. Farrell,* 819 P.2d 896, 899–900 (Alaska 1991) ("[J]oint legal custody is only appropriate when the parents can cooperate and communicate in the child's best interest.").