While I agree that it is appropriate to clarify the confusing state of the law with respect to the tort of intentional *Page 598 
interference with contractual relations and the tort of intentional interference with business relations, I disagree with the conclusion. Unification of the two torts is appropriate because a contractual relation is but a species of business relations in general. It makes little sense to have a very liberal cause of action with regard to an interference with a relatively informal business relation and yet have a very restrictive cause of action with regard to interference with a more formal contractual relation. Therefore, it seems reasonable to have a single tort that deals with interference with all business relations. Furthermore, I agree that the narrowing of the tort of intentional interference to contracts of employment and leases was inadvertent and is due to be corrected.
The majority opinion's approach to unification can be loosely characterized as restricting the tort of interference with business relations and liberalizing the tort of interference with contractual relations to reach some middle ground. It is the liberalization of the tort of interference with contractual relations that concerns me.
One of the most important functions of contract law is to facilitate voluntary exchanges. Generally, contract law consists of a set of clear rules that offer stability and, therefore, predictability, so that complex commercial activity can take place in an orderly manner. Once a valid contract has been entered, contract law generally ensures that the parties will be able to obtain the benefit of their bargain. Upon breach, the promisee is made whole through compensatory damages and can not, as a rule, compel specific performance.[1] As Justice Holmes noted, "it is not the policy of the law to compel adherence to contracts but only to require each party to choose between performing in accordance with the contract and compensating the other party for any injury resulting from failure to perform." O.W. Holmes, The Path of the Law, inCollected Legal Papers 167, 175 (1920). Contract law damages rules therefore recognize an economic principle, that is, that in order to achieve efficiency resources should be put to their best use. See generally, Perlman, Interference with Contractand Other Economic Expectancies: A Clash of Tort and ContractDoctrine, 49 U.Chi.L.Rev. 61 (1982), R. Posner, EconomicAnalysis of Law, § 4.9 (2d ed. 1979).
With this brief overview of contract law as background, I now turn to the interplay between contract law and the torts of intentional interference with contractual or with business relations.
These torts work as cross-purposes with the policy of allowing redistribution of resources. While contract law recognizes the desirability of allowing for redistribution of resources, the tort deters the redistribution of resources by potentially increasing the penalties associated with such a redistribution. Id. I suggest that we not increase that deterrent effect, especially when no one has suggested that some injustice needs correction.
The expansive new tort adopted by the majority reflects the view advanced in the Restatement (Second) of Torts 766 — § 774A (1979). In essence, a cause of action arises, if the defendant knows a contract or business relation exists and he intentionally interferes with that relation and causes injury. While the interference with the relation must be unjustified, justification is an affirmative defense that must be proven by the defendant. The basic difference between the old tort and the new tort is that under the old rule, the interference was deemed justified unless accompanied by fraud or coercion. Moreover, under the old rule, the plaintiff had to prove the existence of fraud or coercion.
As the tort has heretofore been defined, the deterrence is minimal. The parties know what contract damages may be incurred and can rely on there being no tort liability as long as fraud and coercion are *Page 599 
not present. However, the expanded tort will probably increase the deterrent effect and chill competitive forces, because the scope of potential tort liability will be unknown.[2]
Furthermore, because of the way the tort is defined and the burdens of proof allocated, as a practical matter the defendant must prove that there should be no liability rather than the plaintiff proving that there is liability.[3]
 "It is startling that doctrine of this sort is superimposed on an economic order committed to competition. As one member of the American Law Institute observed in the debate over Dean Prosser's draft on tortious interference for the Restatement (Second), `foreign lawyers reading the Restatement as an original matter would find it astounding that the whole competitive order of American industry is prima facie illegal.' As another member said, `in a competitive society it should be assumed that competition is a good thing, and that a person need not be placed in the position of defending his status as a competitor when he engages in . . . normal competitive acts.'" (Citations omitted.)
Perlman at 78, 79.
The expanded tort is not well defined by the majority. The major question of justification is analyzed by a weighing of several factors. It is a jury issue. Dean Prosser notes:
 "[T]he courts have more or less continuously expanded the tort, with the effect, perhaps, that the uncertainties in its definition have become more rather than less significant. Although the tort continues to find supporters, it has been subjected to serious criticisms on a wide range of grounds from economics to justice to free speech, with a good deal of emphasis on the idea that an actor should not be held liable for interference with contract unless the interference is accomplished by unlawful means of an independent tort.
 "All of this leaves open a good many questions about the basis of liability and defense, the types of contract or relationship to be protected, and the kind of interference that will be actionable, each of which requires no little attention before the beginning of an answer can be made."
W. Prosser and W. Keeton, The Law of Torts, § 129 at 979 (1984). The Restatement recognizes that the rules advanced are not specific and concrete:
 "This branch of tort law has not developed a crystallized set of definite rules as to the existence or nonexistence of a privilege to act in the manner stated in §§ 766, 766A or 766B. Because of this fact, this Section is expressed in terms of whether the interference is improper or not, rather than in terms of whether there was a specific privilege to act in the manner specified. The issue in each case is whether the interference is improper or not under the circumstances; whether, upon a consideration of the relative significance of the factors involved, the conduct should be permitted without liability, despite its effect of harm to another. The decision therefore depends upon a judgment and choice of values in each situation. This Section states the important factors to be weighed against each other and balanced in arriving at a judgment; but it does not exhaust the list of possible factors."
Restatement (Second) of Torts § 767 Comment b (1979).
The old law on interference with contractual relations clearly defined unjustified interference, i.e., it required interference accompanied by fraud or coercion, and it placed the burden of proof on the plaintiff. The new tort replaces specificity with vagueness. It makes justification a jury issue subject to inconsistent decisions, and, *Page 600 
more importantly, it makes the defendant prove justification.[4]
In summary, I agree with the result reached in this case and with the unification of the torts, but I disagree with the expansion of the tort of interference with contractual relations. There is no evidence presented in this case that warrants expansion of the tort, and I am otherwise unaware that there is a currently unaddressed social evil that would warrant this expansion. I see no need to adopt a vague rule of law which may have serious negative effects in the absence of a compelling need to expand liability.
HOUSTON, J., concurs.
[1] If there is a concern that contract law does not adequately compensate the promisee, then maybe we should expand contract damages.
[2] The problem is enhanced because of the potential for an award of punitive damages.
[3] The drafters of the Restatement realized the importance of the placement of the burden of proof and did not take a position as to where the burden of proving the impropriety (justification) should lie. Restatement (Second) of Torts § 767 Comment k (1979).
[4] See Alyeska Pipeline Serv. Co. v. Aurora Air Serv., Inc.,604 P.2d 1090 (Alaska 1979), for an example of the importance of the placement of the burden of proof. While justification was an affirmative defense to be proven by the defendant under our old intentional interference with business relations law, there are so few reported cases dealing with that tort that it is difficult to discern the impact of that rule. I would change that rule.